

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL
OFFICE OF JUDICIAL RECORDS**

Steven J. Wulko, Deputy Director
Anjeza Keirstead, Deputy Director

Eric Feder
Deputy Court Administrator
Director, Office of Judicial Records

# RECORD RECEIPT

Philadelphia Case Number: _230402798_

Dear Sir/Madam:

The enclosed case(s) have been **REMOVED** from the **COURT OF COMMON PLEAS, PHILADELPHIA COUNTY** to the **US DISTRICT COURT, EASTERN DISTRICT OF PENNSYLVANIA,** under _2:23-CV-01958_ .

Accordingly, I am enclosing all related filings.

Please return this receipt addressed to:

> **Office of Judicial Records of
> Philadelphia County
> Records Management
> Room 264, City Hall
> Philadelphia, PA  19107**

If you have any questions, please feel free to contact me at 215-686-7008.

Office of Judicial Records

```
REPORT : ZDRDOCT                    First Judicial District              PAGE      1
USER ID: DXS                        CIVIL DOCKET REPORT           RUN DATE 05/25/23
                                    CASE ID 230402798             RUN TIME 11:43 AM
```
------------------------------------------------------------------------

```
CASE NUMBER                 CASE CAPTION
230402798                   ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

FILING DATE                 COURT      LOCATION    JURY
26-APR-2023                 JC         CH          J

CASE TYPE: PRODUCT LIABILITY
STATUS: NOT OF REMOVAL TO US DIST CT
CROSS REFERENCE: DC 2023CV01958
```

23-1958

| Seq # | Assoc | Expn Date | Type | ID | Party Name / Address & Phone No. |
|-------|-------|-----------|------|-----|----------------------------------|
| 1 | | | APLF | A68873 | FELLER, JOEL J<br>ROSS FELLER CASEY LLP<br>1650 MARKET ST SUITE 3450<br>PHILADELPHIA PA 19103<br>(215)574-2000<br>(215)574-3080 - FAX<br>jfeller@rossfellercasey.com |
| 2 | 1 | | PLF | @11629592 | ASHWORTH, CHARLES<br>4306 SYLVAN DRIVE<br>READING PA 19606 |
| 3 | 32 | | DFT | @11629593 | NEW MEXICO DONOR SERVICES INC<br>1609 UNIVERSITY BOULEVARD NE<br>ALBUQUERQUE NM 87102 |
| 4 | 34 | | DFT | @11629594 | READING HOSPITAL<br>420 SOUTH 5TH AVENUE<br>READING PA 19611 |
| 5 | 34 | | DFT | @11629595 | TOWER HEALTH<br>420 SOUTH 5TH AVENUE<br>READING PA 19611 |
| 6 | 34 | | DFT | @11629596 | TOWER HEALTH MEDICAL GROUP<br>420 SOUTH 5TH AVENUE<br>READING PA 19611 |
| 7 | 34 | | DFT | @11629597 | LAMBORN D.O, DAVID<br>420 SOUTH 5TH AVENUE<br>READING PA 19611 |
| 8 | 34 | | DFT | @11629598 | WIMER PAC, DANIEL<br>420 SOUTH 5TH AVENUE<br>READING PA 19611 |
| 9 | 34 | | DFT | @11629599 | SHAH MD, ANKIT<br>420 SOUTH 5TH AVENUE<br>READING PA 19611 |

```
                                                             PAGE      2
REPORT : ZDRDOCT           First Judicial District     RUN DATE 05/25/23
USER ID: DXS               CIVIL DOCKET REPORT         RUN TIME 11:43 AM
                           CASE ID 230402798
```

| Seq # | Assoc | Expn Date | Type | ID | Party Name / Address & Phone No. |
|-------|-------|-----------|------|-----|-----------------------------------|
| 10 | 34 | | DFT | @11629600 | SIGAL MD, ADAM<br>420 SOUTH 5TH AVENUE<br>READING PA 19611 |
| 11 | 34 | | DFT | @11629601 | ROARABAUGH PAC, CHAD<br>420 SOUTH 5TH AVENUE<br>READING PA 19611 |
| 12 | 29 | | DFT | @11629602 | MAIN LINE HOSPITALS INC DBA PAOLI<br>255 WEST LANCASTER AVENUE<br>PAOLI PA 19301<br>AKA- D/B/A PAOLI HOSPITAL |
| 13 | 1 | | PDTR | @11629603 | ASHWORTH, CHARLES<br>4036 SYLVAN DRIVE<br>READING PA 19606 |
| 14 | 29 | | DFT | @11629604 | MAIN LINE HEALTHCARE<br>3803 WEST CHESTER PIKE<br>NEWTOWN SQUARE PA 19073 |
| 15 | 29 | | DFT | @11629605 | MAIN LINE HEATH SYSTEM<br>240 NORTH RADNOR-CHESTER ROAD<br>RADNOR PA 19087 |
| 16 | | | DFT | @11629606 | DRAKE MD, MITCHELL<br>3803 WEST CHESTER PIKE<br>NEWTOWN SQUARE PA 19073 |
| 17 | | | DFT | @11629607 | VIOLA PAC, JESSICA R<br>3803 WEST CHESTER PIKE<br>NEWTOWN SQUARE PA 19073 |
| 18 | 29 | | DFT | @11629608 | LI MD, JOSEPH C<br>3803 WEST CHESTER PIKE<br>NEWTOWN SQUARE PA 19073 |
| 19 | 28 | | DFT | @11629609 | EUROFINS DONOR & PRODUCT TESTING I<br>401 NORTH 3RD STREET<br>SUITE 279<br>PHILADELPHIA PA 19123<br>AKA- F/K/A EUROFINS VRL |
| 20 | 37 | | DFT | @11629610 | AZIYO BIOLOGICS INC<br>12510 PROSPERITY DRIVE<br>SUITE 370<br>SILVER SPRINGS MD 20904 |
| 21 | 37 | | DFT | @11629611 | MEDTRONIC SOFAMOR DANEK USA INC<br>2600 SOFAMOR DANEK DRIVE<br>MEMPHIS TN 38132 |

```
REPORT : ZDRDOCT              First Judicial District        PAGE      3
USER ID: DXS                    CIVIL DOCKET REPORT       RUN DATE 05/25/23
                                 CASE ID 230402798        RUN TIME 11:43 AM
```

| Seq # | Assoc | Expn Date | Type | ID | Party Name / Address & Phone No. |
|-------|-------|-----------|------|-----|----------------------------------|
| 22 | 37 | | DFT | @11629612 | SPINALGRAFT TECHNOLOGIES LLC |
| | | | | | 4340 SWINNEA ROAD |
| | | | | | MEMPHIS TN 38118 |
| 23 | 32 | | DFT | @11629613 | DCI DONOR SERVICES INC |
| | | | | | 566 MAINSTREAM DRIVE |
| | | | | | SUITE 300 |
| | | | | | NASHVILLE TN 37228 |
| 24 | 1 | | APLF | A310164 | HARDEN JR, KEVIN |
| | | | | | ROSS FELLER CASEY LLP |
| | | | | | ONE LIBERTY PLACE |
| | | | | | 1650 MARKET ST - SUITE 3400 |
| | | | | | PHILADELPHIA PA 19103 |
| | | | | | (215)574-2000 |
| | | | | | (215)574-9080 - FAX |
| | | | | | kharden@rossfellercasey.com |
| 25 | 1 | | APLF | A320802 | JACOBSEN, KYLE A |
| | | | | | 1650 MARKET ST. |
| | | | | | 34TH FLOOR |
| | | | | | PHILADELPHIA PA 19103 |
| | | | | | (610)453-5952 |
| | | | | | (215)574-3080 - FAX |
| | | | | | kjacobsen@rossfellercasey.com |
| 26 | | | TL | J461 | ANDERS, DANIEL J |
| | | | | | 529 CITY HALL |
| | | | | | PHILADELPHIA PA 19107 |
| 27 | | | ADFT | A28463 | DANGELO, CHRISTOPHER S |
| | | | | | 1735 MARKET ST |
| | | | | | PHILADELPHIA PA 19103 |
| | | | | | (215)772-7397 |
| | | | | | (215)731-3767 - FAX |
| | | | | | cdangelo@mmwr.com |
| 28 | | | ADFT | A330484 | STEELE, FIONA |
| | | | | | 1735 MARKET ST. |
| | | | | | 21ST FLOOR |
| | | | | | PHILADELPHIA PA 19103 |
| | | | | | (802)595-9999 |
| | | | | | fsteele@mmwr.com |
| 29 | | | ADFT | A81020 | SCHWARTZ, MARSHALL L |
| | | | | | O'BRIEN & RYAN LLP |
| | | | | | HICKORY POINTE |
| | | | | | 2250 HICKORY ROAD, SUITE 300 |
| | | | | | PLYMOUTH MEETING PA 19462 |
| | | | | | (610)834-8800 |
| | | | | | (610)834-1749 - FAX |
| | | | | | mschwartz@obrlaw.com |

```
REPORT : ZDRDOCT                    First Judicial District          PAGE      4
USER ID: DXS                          CIVIL DOCKET REPORT         RUN DATE 05/25/23
                                      CASE ID 230402798           RUN TIME 11:43 AM
```

```
                                                      Party Name / Address & Phone No.
Seq # Assoc Expn Date    Type  ID                     LITTMAN, BRETT M
30    29                 ADFT  A94144                    2250 HICKORY ROAD
                                                         SUITE 300
                                                         PLYMOUTH MEETING PA 19462
                                                         (610)834-8800
                                                         blittman@obrlaw.com


31    29                 ADFT  A326268                SWEENEY, FRANCIS S
                                                         2250 HICKORY ROAD
                                                         SUITE 300
                                                         PLYMOUTH MEETING PA 19462
                                                         (610)834-6248
                                                         ssweeney@obrlaw.com


32                       ADFT  A89097                 ONEAL III, STUART T
                                                         BURNS WHITE, LLC
                                                         100 FOUR FALLS, STE.  515
                                                         1001 CONSHOHOCKEN STATE RD.
                                                         WEST CONSHOHOCKEN PA 19428
                                                         (484)567-5747
                                                         soneal@burnswhite.com


33    32                 ADFT  A89225                 ENGELKRAUT, BRETT
                                                         BURNS WHITE
                                                         100 FOUR FALLS SUITE 515
                                                         1001 CONSHOHOCKEN STATE RD
                                                         WEST CONSHOHOCKEN PA 19428
                                                         (484)567-5724
                                                         (484)567-5701 - FAX
                                                         bjengelkraut@burnswhite.com


34                       ADFT  A92118                 GOEBEL III, CHILTON G
                                                         SAXTON & STUMP
                                                         100 DEERFIELD LANE, SUITE 240
                                                         MALVERN PA 19355
                                                         (484)328-8500
                                                         (484)713-5241 - FAX
                                                         cgg@saxtonstump.com


35    34                 ADFT  A312148                GLASSER, HARLAN W
                                                         SAXTON & STUMP
                                                         4250 CRUMS MILL ROAD
                                                         SUITE 201
                                                         HARRISBURG PA 17112
                                                         (717)941-1203
                                                         (717)547-1900 - FAX
                                                         hglasser@saxtonstump.com


36    34                 ADFT  A322622                GREEN, LAUREN A
                                                         SAXTON & STUMP
                                                         100 DEERFIELD LANE
                                                         SUITE 240
                                                         MALVERN PA 19355
```

```
REPORT : ZDRDOCT                First Judicial District          PAGE      5
USER ID: DXS                     CIVIL DOCKET REPORT       RUN DATE 05/25/23
                                 CASE ID 230402798         RUN TIME 11:43 AM
```

```
                                              Party Name / Address & Phone No.
Seq # Assoc Expn Date    Type  ID                (484)328-8500
                                                 (484)713-5241 - FAX
                                                 lag@saxtonstump.com

37                       ADFT  A203398        ABBOTT ESQ, MICHAEL
                                                 450 SENTRY PARKWAY
                                                 SUITE 200
                                                 BLUE BELL PA 19422
                                                 (610)567-0700
                                                 (610)567-0712 - FAX
                                                 mabbott@c-wlaw.com

38    37                 ADFT  A83350         KOSCHINEG, ERNEST F
                                                 CIPRIANI & WERNER
                                                 450 SENTRY PARKWAY
                                                 SUITE 200
                                                 BLUE BELL PA 19422
                                                 (610)567-0700
                                                 (610)567-0712 - FAX
                                                 ekoschineg@c-wlaw.com
```

```
                                                              Date Entered
Filing Date / Time   Docket Entry                               26-APR-23

26-APR-23 16:05:52   ACTIVE CASE
                     E-Filing Number: 2304055456

26-APR-23 16:05:52   COMMENCEMENT CIVIL ACTION JURY            26-APR-23
                                                               FELLER, JOEL J

26-APR-23 16:05:52   COMPLAINT FILED NOTICE GIVEN             26-APR-23
                                                               FELLER, JOEL J
                     COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS
                     AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 FILED.

26-APR-23 16:05:52   JURY TRIAL PERFECTED                      26-APR-23
                                                               FELLER, JOEL J
                     12 JURORS REQUESTED.

26-APR-23 16:05:52   WAITING TO LIST CASE MGMT CONF            26-APR-23
                                                               FELLER, JOEL J

26-APR-23 16:30:08   ENTRY OF APPEARANCE-CO COUNSEL            26-APR-23
                                                               HARDEN JR, KEVIN
                     ENTRY OF APPEARANCE OF KYLE A JACOBSEN AND KEVIN HARDEN
                     AS CO-COUNSEL FILED.  (FILED ON BEHALF OF CHARLES
                     ASHWORTH AND CHARLES ASHWORTH)

27-APR-23 14:36:15   CERTIFICATE OF MERIT                      27-APR-23
                                                               HARDEN JR, KEVIN
                     CERTIFICATE OF MERIT AS TO DEFT ANKIT SHAH IS FILED
                     (FILED ON BEHALF OF CHARLES ASHWORTH)
```

```
REPORT : ZDRDOCT              First Judicial District          PAGE      6
USER ID: DXS                  CIVIL DOCKET REPORT        RUN DATE 05/25/23
                              CASE ID 230402798          RUN TIME 11:43 AM
```

Filing Date / Time   Docket Entry                          Date Entered

27-APR-23 14:39:58    CERTIFICATE OF MERIT                     27-APR-23
                                                    HARDEN JR, KEVIN
                      CERTIFICATE OF MERIT AS TO DEFT CHAD ROARABAUGH IS
                      FILED (FILED ON BEHALF OF CHARLES ASHWORTH)

27-APR-23 14:42:43    CERTIFICATE OF MERIT                     27-APR-23
                                                    HARDEN JR, KEVIN
                      CERTIFICATE OF MERIT AS TO DEFT DANIEL WIMER IS FILED
                      (FILED ON BEHALF OF CHARLES ASHWORTH)

27-APR-23 14:44:31    CERTIFICATE OF MERIT                     27-APR-23
                                                    HARDEN JR, KEVIN
                      CERTIFICATE OF MERIT AS TO DEFT DAVID LAMBORN IS FILED
                      (FILED ON BEHALF OF CHARLES ASHWORTH)

27-APR-23 14:46:29    CERTIFICATE OF MERIT                     27-APR-23
                                                    HARDEN JR, KEVIN
                      CERTIFICATE OF MERIT AS TO DEFT JESSICA R VIOLA IS
                      FILED (FILED ON BEHALF OF CHARLES ASHWORTH)

27-APR-23 14:48:46    CERTIFICATE OF MERIT                     27-APR-23
                                                    HARDEN JR, KEVIN
                      CERTIFICATE OF MERIT AS TO DEFT JOSEPH C LI IS FILED
                      (FILED ON BEHALF OF CHARLES ASHWORTH)

27-APR-23 14:51:35    CERTIFICATE OF MERIT                     27-APR-23
                                                    HARDEN JR, KEVIN
                      CERTIFICATE OF MERIT AS TO DEFT MAIN LINE HEATH SYSTEM
                      IS FILED (FILED ON BEHALF OF CHARLES ASHWORTH)

27-APR-23 14:54:11    CERTIFICATE OF MERIT                     27-APR-23
                                                    HARDEN JR, KEVIN
                      CERTIFICATE OF MERIT AS TO DEFT MAIN LINE HEALTHCARE IS
                      FILED (FILED ON BEHALF OF CHARLES ASHWORTH)

27-APR-23 14:56:21    CERTIFICATE OF MERIT                     27-APR-23
                                                    HARDEN JR, KEVIN
                      CERTIFICATE OF MERIT AS TO DEFT MITCHELL DRAKE IS FILED
                      (FILED ON BEHALF OF CHARLES ASHWORTH)

27-APR-23 14:58:19    CERTIFICATE OF MERIT                     27-APR-23
                                                    HARDEN JR, KEVIN
                      CERTIFICATE OF MERIT AS TO DEFT MAIN LINE HOSPITALS INC
                      DBA PAOLI HOSPITAL IS FILED (FILED ON BEHALF OF
                      CHARLES ASHWORTH)

27-APR-23 15:00:16    CERTIFICATE OF MERIT                     27-APR-23
                                                    HARDEN JR, KEVIN
                      CERTIFICATE OF MERIT AS TO DEFT READING HOSPITAL IS
                      FILED (FILED ON BEHALF OF CHARLES ASHWORTH)

REPORT : ZDRDOCT                                                    PAGE      7
USER ID: DXS                    First Judicial District           RUN DATE 05/25/23
                                CIVIL DOCKET REPORT               RUN TIME 11:43 AM
                                 CASE ID 230402798

Filing Date / Time  Docket Entry                                  Date Entered

27-APR-23 15:02:18  CERTIFICATE OF MERIT                              27-APR-23
                                                                 HARDEN JR, KEVIN
                    CERTIFICATE OF MERIT AS TO DEFT TOWER HEALTH MEDICAL
                    GROUP IS FILED (FILED ON BEHALF OF CHARLES ASHWORTH)

27-APR-23 15:04:20  CERTIFICATE OF MERIT                              27-APR-23
                                                                 HARDEN JR, KEVIN
                    CERTIFICATE OF MERIT AS TO DEFT TOWER HEALTH IS FILED
                    (FILED ON BEHALF OF CHARLES ASHWORTH)

27-APR-23 15:06:33  CERTIFICATE OF MERIT                              27-APR-23
                                                                 HARDEN JR, KEVIN
                    CERTIFICATE OF MERIT AS TO DEFT ADAM SIGAL IS FILED
                    (FILED ON BEHALF OF CHARLES ASHWORTH)

28-APR-23 13:07:19  AFFIDAVIT OF SERVICE FILED                        28-APR-23
                    AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON
                    EUROFINS DONOR & PRODUCT TESTING INC FKA EUROFINS VRL
                    BY PERSONAL SERVICE ON 04/27/2023 FILED.

04-MAY-23 16:51:46  AFFIDAVIT OF SERVICE FILED                        05-MAY-23
                                                                 HARDEN JR, KEVIN
                    AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON
                    AZIYO BIOLOGICS INC BY CERTIFIED MAIL ON 05/03/2023
                    FILED.  (FILED ON BEHALF OF CHARLES ASHWORTH)

05-MAY-23 10:53:05  AFFIDAVIT OF SERVICE FILED                        05-MAY-23
                                                                 HARDEN JR, KEVIN
                    AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON
                    SPINAL GRAFT TECHNOLOGIES LLC INC BY CERTIFIED MAIL
                    ON 05/04/2023 FILED.  (FILED ON BEHALF OF CHARLES
                    ASHWORTH)

05-MAY-23 10:55:52  AFFIDAVIT OF SERVICE FILED                        05-MAY-23
                                                                 HARDEN JR, KEVIN
                    AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON
                    SPINALGRAFT TECHNOLOGIES LLC BY CERTIFIED MAIL ON
                    05/04/2023 FILED.  (FILED ON BEHALF OF CHARLES
                    ASHWORTH)

05-MAY-23 11:00:09  AFFIDAVIT OF SERVICE FILED                        05-MAY-23
                                                                 HARDEN JR, KEVIN
                    AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON DCI
                    DONOR SERVICES INC BY CERTIFIED MAIL ON 05/04/2023
                    FILED.  (FILED ON BEHALF OF CHARLES ASHWORTH)

05-MAY-23 13:55:49  AFFIDAVIT OF SERVICE FILED                        05-MAY-23
                                                                 HARDEN JR, KEVIN
                    AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON
                    MEDTRONIC SOFAMOR DANEK USA INC BY CERTIFIED MAIL ON
                    05/04/2023 FILED.  (FILED ON BEHALF OF CHARLES
                    ASHWORTH)

PAGE    8
RUN DATE 05/25/23
RUN TIME 11:43 AM

REPORT : ZDRDOCT                First Judicial District
USER ID: DXS                     CIVIL DOCKET REPORT
                                 CASE ID 230402798

Date Entered

Filing Date / Time    Docket Entry

08-MAY-23

08-MAY-23 14:44:06    AFFIDAVIT OF SERVICE FILED          HARDEN JR, KEVIN

AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON NEW
MEXICO DONOR SERVICES INC BY CERTIFIED MAIL ON
05/05/2023 FILED.   (FILED ON BEHALF OF CHARLES
ASHWORTH)

15-MAY-23

15-MAY-23 09:59:08    ENTRY OF APPEARANCE          DANGELO, CHRISTOPHER S

ENTRY OF APPEARANCE OF FIONA STEELE AND CHRISTOPHER S
DANGELO FILED.   (FILED ON BEHALF OF EUROFINS DONOR &
PRODUCT TESTING INC FKA EUROFINS VRL)

15-MAY-23

15-MAY-23 14:25:25    PRAECIPE TO REINSTATE CMPLT          HARDEN JR, KEVIN

COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS
AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1
REINSTATED.   (FILED ON BEHALF OF CHARLES ASHWORTH AND
CHARLES ASHWORTH)

16-MAY-23

16-MAY-23 11:11:31    PRELIMINARY OBJECTIONS          DANGELO, CHRISTOPHER S

77-23053177 PRELIMINARY OBJECTIONS TO PLAINTIFF'S
COMPLAINT FILED.   RESPONSE DATE: 06/05/2023 (FILED ON
BEHALF OF EUROFINS DONOR & PRODUCT TESTING INC FKA
EUROFINS VRL)

16-MAY-23

16-MAY-23 12:06:13    ENTRY OF APPEARANCE          SCHWARTZ, MARSHALL L

ENTRY OF APPEARANCE OF BRETT M LITTMAN, MARSHALL L
SCHWARTZ AND FRANCIS S SWEENEY FILED.   (FILED ON BEHALF
OF JOSEPH C LI, MAIN LINE HEATH SYSTEM, MAIN LINE
HEALTHCARE AND MAIN LINE HOSPITALS INC DBA PAOLI
HOSPITAL)

16-MAY-23

16-MAY-23 12:06:13    JURY TRIAL PERFECTED          SCHWARTZ, MARSHALL L

12 JURORS REQUESTED.

18-MAY-23

17-MAY-23 20:18:42    AFFIDAVIT OF SERVICE FILED
                      AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON
JOSEPH C LI, MITCHELL DRAKE AND MAIN LINE HEALTHCARE
BY SHERIFF SERVICE DELAWARE ON 05/05/2023 FILED.

18-MAY-23

17-MAY-23 20:21:40    AFFIDAVIT OF SERVICE FILED
                      AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON MAIN
LINE HEATH SYSTEM BY SHERIFF SERVICE MONTGOMERY ON
05/04/2023 FILED.

19-MAY-23

19-MAY-23 14:18:13    AFFIDAVIT OF SERVICE FILED
                      AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON
DAVID LAMBORN, TOWER HEALTH MEDICAL GROUP, TOWER

REPORT : ZDRDOCT
USER ID: DXS

First Judicial District
CIVIL DOCKET REPORT
CASE ID 230402798

Date Entered

Filing Date / Time    Docket Entry

HEALTH AND READING HOSPITAL BY SHERIFF SERVICE BERKS
ON 05/04/2023 FILED.

19-MAY-23 14:23:29    AFFIDAVIT OF SERVICE FILED    19-MAY-23
AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON CHAD
ROARABAUGH, ADAM SIGAL AND ANKIT SHAH BY SHERIFF
SERVICE BERKS ON 05/04/2023 FILED.

19-MAY-23 14:25:44    ATTEMPTED SERVICE - NOT FOUND    19-MAY-23
DANIEL WIMER NOT FOUND ON 05/04/2023.

19-MAY-23 14:27:45    AFFIDAVIT OF SERVICE FILED    19-MAY-23
AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON MAIN
LINE HOSPITALS INC DBA PAOLI HOSPITAL BY SHERIFF
SERVICE LANCASTER ON 05/08/2023 FILED.

22-MAY-23 14:11:50    AFFIDAVIT OF SERVICE FILED    22-MAY-23
AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON
JESSICA R VIOLA BY PERSONAL SERVICE ON 05/05/2023
FILED.

23-MAY-23 12:03:18    ENTRY OF APPEARANCE    23-MAY-23
ONEAL III, STUART T
ENTRY OF APPEARANCE OF BRETT ENGELKRAUT AND STUART T
ONEAL FILED.  (FILED ON BEHALF OF DCI DONOR SERVICES
INC AND NEW MEXICO DONOR SERVICES INC)

23-MAY-23 12:03:18    JURY TRIAL PERFECTED    23-MAY-23
ONEAL III, STUART T
12 JURORS REQUESTED.

23-MAY-23 14:19:39    ENTRY OF APPEARANCE    23-MAY-23
GOEBEL III, CHILTON G
ENTRY OF APPEARANCE OF CHILTON G GOEBEL, LAUREN A GREEN
AND HARLAN W GLASSER FILED.  (FILED ON BEHALF OF CHAD
ROARABAUGH, ADAM SIGAL, ANKIT SHAH, DANIEL WIMER,
DAVID LAMBORN, TOWER HEALTH MEDICAL GROUP, TOWER
HEALTH AND READING HOSPITAL)

23-MAY-23 14:19:39    JURY TRIAL PERFECTED    23-MAY-23
GOEBEL III, CHILTON G
12 JURORS REQUESTED.

23-MAY-23 14:21:02    ENTRY OF APPEARANCE    23-MAY-23
ABBOTT ESQ, MICHAEL
ENTRY OF APPEARANCE OF ERNEST F KOSCHINEG AND MICHAEL
ABBOTT FILED.  (FILED ON BEHALF OF SPINALGRAFT
TECHNOLOGIES LLC, MEDTRONIC SOFAMOR DANEK USA INC AND
AZIYO BIOLOGICS INC)

```
REPORT : ZDRDOCT                    First Judicial District              PAGE    10
USER ID: DXS                         CIVIL DOCKET REPORT          RUN DATE 05/25/23
                                      CASE ID 230402798           RUN TIME 11:43 AM
```

                                                                        Date Entered

Filing Date / Time   Docket Entry                                          23-MAY-23
                                                                  ABBOTT ESQ, MICHAEL
23-MAY-23 14:21:02   JURY TRIAL PERFECTED

                     12 JURORS REQUESTED.
                                                                           24-MAY-23
                                                                  ABBOTT ESQ, MICHAEL
23-MAY-23 21:30:59   NOT OF REMOVAL TO US DIST CT

                     NOTICE OF REMOVAL TO THE U.S.  (EASTERN) DISTRICT COURT
                     UNDER 2023-CV-01958.  (FILED ON BEHALF OF SPINALGRAFT
                     TECHNOLOGIES LLC, MEDTRONIC SOFAMOR DANEK USA INC AND
                     AZIYO BIOLOGICS INC)



                        * * * End of Docket * * *

CERTIFIED FROM THE RECORD OF  MAY 2 5 2023
ERIC FEDER
DIRECTOR, OFFICE OF JUDICIAL RECORDS
PHILADELPHIA COUNTY
BY

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798

Docket:        COMMENCEMENT CIVIL ACTION JURY

APRIL 26, 2023 16:05:52

Sequence:   2

File: 1   Final Cover

#11466884

05/25/23 03:37 PM

zlrppdf 2/27/2013

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| For Prothonotary Use Only (Docket Number) |
|---|
| **APRIL 2023**    **02798** |
| E-Filing Number: 2304055456 |

**PLAINTIFF'S NAME**
CHARLES ASHWORTH

**DEFENDANT'S NAME**
EUROFINS DONOR & PRODUCT TESTING INC. F/K/A
EUROFINS VRL, ALIAS:  F/K/A EUROFINS VRL

**PLAINTIFF'S ADDRESS**
4306 SYLVAN DRIVE
READING PA 19606

**DEFENDANT'S ADDRESS**
401 NORTH 3RD STREET SUITE 279
PHILADELPHIA PA 19123

**PLAINTIFF'S NAME**
CHARLES ASHWORTH

**DEFENDANT'S NAME**
AZIYO BIOLOGICS, INC

**PLAINTIFF'S ADDRESS**
4036 SYLVAN DRIVE
READING PA 19606

**DEFENDANT'S ADDRESS**
12510 PROSPERITY DRIVE SUITE 370
SILVER SPRINGS MD 20904

**PLAINTIFF'S NAME**

**DEFENDANT'S NAME**
MEDTRONIC SOFAMOR DANEK USA, INC.

**PLAINTIFF'S ADDRESS**

**DEFENDANT'S ADDRESS**
2600 SOFAMOR DANEK DRIVE
MEMPHIS TN 38132

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 20 | [X] Complaint   [ ] Petition Action   [ ] Notice of Appeal
[ ] Writ of Summons   [ ] Transfer From Other Jurisdictions |

**AMOUNT IN CONTROVERSY**
[ ] $50,000.00 or less
[X] More than $50,000.00

**COURT PROGRAMS**
[ ] Arbitration
[X] Jury
[ ] Non-Jury
[ ] Other: _____
[ ] Mass Tort
[ ] Savings Action
[ ] Petition
[ ] Commerce
[ ] Minor Court Appeal
[ ] Statutory Appeals
[ ] Settlement
[ ] Minors
[ ] W/D/Survival

**CASE TYPE AND CODE**
2P - PRODUCT LIABILITY

**STATUTORY BASIS FOR CAUSE OF ACTION**

**RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)**

**FILED
PRO PROTHY**

APR **26** 2023

**G. IMPERATO**

**IS CASE SUBJECT TO
COORDINATION ORDER?**
YES        NO

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>CHARLES ASHWORTH , CHARLES ASHWORTH</u>

Papers may be served at the address set forth below.

**NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY**
JOEL J. FELLER

**ADDRESS**
ROSS FELLER CASEY LLP
1650 MARKET ST SUITE 3450
PHILADELPHIA PA 19103

| PHONE NUMBER | FAX NUMBER |
|---|---|
| (215)574-2000 | (215)574-3080 |

**SUPREME COURT IDENTIFICATION NO.**
68873

**E-MAIL ADDRESS**
jfeller@rossfellercasey.com

**SIGNATURE OF FILING ATTORNEY OR PARTY**
JOEL FELLER

**DATE SUBMITTED**
Wednesday, April 26, 2023, 04:05 pm

FINAL COPY (Approved by the Prothonotary Clerk)

**COMPLETE LIST OF DEFENDANTS:**

1. EUROFINS DONOR & PRODUCT TESTING INC. F/K/A EUROFINS VRL
   ALIAS: F/K/A EUROFINS VRL
   401 NORTH 3RD STREET SUITE 279
   PHILADELPHIA PA 19123
2. AZIYO BIOLOGICS, INC
   12510 PROSPERITY DRIVE SUITE 370
   SILVER SPRINGS MD 20904
3. MEDTRONIC SOFAMOR DANEK USA, INC.
   2600 SOFAMOR DANEK DRIVE
   MEMPHIS TN 38132
4. SPINALGRAFT TECHNOLOGIES, LLC
   4340 SWINNEA ROAD
   MEMPHIS TN 38118
5. DCI DONOR SERVICES, INC.
   566 MAINSTREAM DRIVE SUITE 300
   NASHVILLE TN 37228
6. NEW MEXICO DONOR SERVICES, INC.
   1609 UNIVERSITY BOULEVARD NE
   ALBUQUERQUE NM 87102
7. READING HOSPITAL
   420 SOUTH 5TH AVENUE
   READING PA 19611
8. TOWER HEALTH
   420 SOUTH 5TH AVENUE
   READING PA 19611
9. TOWER HEALTH MEDICAL GROUP
   420 SOUTH 5TH AVENUE
   READING PA 19611
10. DAVID LAMBORN
    420 SOUTH 5TH AVENUE
    READING PA 19611
11. DANIEL WIMER
    420 SOUTH 5TH AVENUE
    READING PA 19611
12. ANKIT SHAH
    420 SOUTH 5TH AVENUE
    READING PA 19611
13. ADAM SIGAL
    420 SOUTH 5TH AVENUE
    READING PA 19611
14. CHAD ROARABAUGH
    420 SOUTH 5TH AVENUE
    READING PA 19611
15. MAIN LINE HOSPITALS, INC. D/B/A PAOLI HOSPITAL
    ALIAS: D/B/A PAOLI HOSPITAL
    255 WEST LANCASTER AVENUE
    PAOLI PA 19301
16. MAIN LINE HEALTHCARE
    3803 WEST CHESTER PIKE
    NEWTOWN SQUARE PA 19073
17. MAIN LINE HEATH SYSTEM
    240 NORTH RADNOR-CHESTER ROAD
    RADNOR  PA 19087

18. MITCHELL DRAKE
       3803 WEST CHESTER PIKE
       NEWTOWN SQUARE PA 19073
19. JESSICA R. VIOLA PAC
       3803 WEST CHESTER PIKE
       NEWTOWN SQUARE PA 19073
20. JOSEPH C. LI MD
       3803 WEST CHESTER PIKE
       NEWTOWN SQUARE PA 19073

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798

Docket:      COMPLAINT FILED NOTICE GIVEN

             APRIL 26, 2023 16:05:52

Sequence:    3

**File:** 1   FINAL - COMPLAINT - ASHWORTH V AZIYO ET AL.pdf

Filed and Attested by the
Office of Judicial Records
26 APR 2023 04:05 pm
G. IMPERATO

**ROSS FELLER CASEY, LLP**
By:  JOEL J. FELLER, ESQUIRE
      KEVIN HARDEN, JR., ESQUIRE
      KYLE A. JACOBSEN, ESQUIRE
      I.D. NOS: 68873/310164/320802
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000

Attorneys for Plaintiffs

| | |
|---|---|
| **CHARLES ASHWORTH, Individually and as Administrator of the Estate of NICOLE ASHWORTH**<br>4306 Sylvan Drive<br>Reading, Pennsylvania<br><br>*Plaintiffs*<br><br>v.<br><br>**EUROFINS DONOR & PRODUCT TESTING INC., F/K/A EUROFINS VRL**<br>401 North 3rd Street, Suite 279<br>Philadelphia, PA<br>and… | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br><br>APRIL TERM 2023<br>NO.<br><br>**JURY TRIAL DEMANDED** |

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

**ADVISO**

Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y require que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ESTA OFICINA LO PUEDE PROPORCIONAR CON INFORMACION ACERCA DE EMPLEAR A UN ABOGADO. SI USTED NO PUEDE PROPORCIONAR PARA EMPLEAR A UN ABOGADO, ESTA OFICINA PUEDE SER CAPAZ DE PROPORCIONARLO CON INFORMACION ACERCA DE LAS AGENCIAS QUE PUEDEN OFRECER LOS SERVICIOS LEGALES A PERSONAS ELEGIBLES EN UN HONORARIO REDUCIDO NINGUN HONORARIO.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

**AZIYO BIOLOGICS, INC**
12510 Prosperity Drive
Suite 370
Silver Springs, Maryland
and/or
Corporation Service Company
251 Little Falls Drive
Wilmington, Delaware
    and
**MEDTRONIC SOFAMOR DANEK USA, INC.**
2600 Sofamor Danek Drive
Memphis, Tennessee
and/or
Corporation Service Company
251 Little Falls Drive
Wilmington, Delaware
    and
**SPINALGRAFT TECHNOLOGIES, LLC**
4340 Swinnea Road
Memphis, Tennessee
and/or
Corporation Service Company
251 Little Falls Drive
Wilmington, Delaware
    and
**DCI DONOR SERVICES, INC.**
566 Mainstream Drive
Suite 300
Nashville, Tennessee
and/or
Corporation Service Company
2908 Poston Avenue
Nashville, Tennessee
    and
**NEW MEXICO DONOR SERVICES, INC**
1609 University Boulevard NE,
Albuquerque, New Mexico
and/or
Corporation Service Company
MC-CSC 1726 East Michigan Drive
Suite 101
Hobbes, New Mexico
and
**READING HOSPITAL**
420 South 5th Avenue
Reading, Pennsylvania
and

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**TOWER HEALTH**
420 South 5th Avenue
Reading, Pennsylvania
and
**TOWER HEALTH MEDICAL GROUP**
420 South 5th Avenue
Reading, Pennsylvania
and
**DAVID LAMBORN, D.O.**
c/o Tower Health
420 South 5th Avenue
Reading, Pennsylvania
and
**DANIEL WIMER, PA-C**
c/o Tower Health
420 South 5th Avenue
Reading, Pennsylvania
and
**ANKIT SHAH, M.D.**
c/o Tower Health
420 South 5th Avenue
Reading, Pennsylvania
and
**ADAM SIGAL, M.D.**
c/o Tower Health
420 South 5th Avenue
Reading, Pennsylvania,
And
**CHAD ROARABAUGH, PA-C**
c/o Tower Health
420 South 5th Avenue
Reading, Pennsylvania
and
**MAIN LINE HOSPITALS, INC., d/b/a**
**PAOLI HOSPITAL**
255 West Lancaster Avenue
Paoli, Pennsylvania, M.D.
and
**MAIN LINE HEALTHCARE**
3803 West Chester Pike
Newtown Square, PA
and
**MAIN LINE HEALTH SYSTEM**
240 North Radnor-Chester Road
Radnor, PA 19087
and

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

MITCHELL DRAKE, M.D.
c/o Main Line Healthcare
3803 West Chester Pike
Newtown Square, PA
and
JESSICA RAE VIOLA, PA-C
c/o Main Line Healthcare
3803 West Chester Pike
Newtown Square, PA
and
JOSEPH C. LI, M.D.
c/o Main Line Healthcare
3803 West Chester Pike
Newtown Square, PA
and/or
c/o Paoli Hospital
255 West Lancaster Avenue
Paoli, Pennsylvania

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

## PLAINTIFF'S COMPLAINT

Charles Ashworth, Individually and as the Administrator of the Estate of his widow, Nicole Ashworth, files this Civil Action Complaint against Defendants Aziyo Biologics, Inc., Medtronic Sofamor Danek USA, Inc., Spinalgraft Technologies LLC, DCI Donor Services, Inc., New Mexico Donor Services, Inc., Eurofins Donor & Product Testing, Inc., f/k/a Eurofins VRL, Reading Hospital, Tower Health, Tower Health Medical Group, Paoli Hospital, Main Line Healthcare, David Lamborn, M.D., Daniel Wimer, PA-C, Ankit Shah, M.D., Adam Sigal, M.D., Chad Roarabaugh, PA-C, Mitchell Drake, M.D., Jessica Rae Viola, PA-C, and Joseph C. Li, M.D.

## SUMMARY OF ACTION

The FiberCel Defendants manufactured and sold FiberCel, a bone product that doctors implanted into Mrs. Ashworth. Unbeknownst to Mrs. Ashworth and her implanting surgeon, the bone product was defective and unsafe because the FiberCel Defendants failed to properly screen and test the materials used to manufacture the FiberCel used in Mrs. Ashworth's surgery and sold

Case ID: 2304027

a dangerous tuberculosis contaminated product to patients across the United States, including Mrs. Ashworth.

Following the implantation of the tuberculosis-contaminated product, Mrs. Ashworth was caused to suffer for weeks and died, despite presenting to Reading Hospital's and Paoli Hospital's emergency department four times in one week with symptoms that should have led to life-saving diagnosis and treatment. The FiberCel used in Mrs. Ashworth was recalled weeks after her death. She is survived by her husband and her now 7-year-old son.

## PARTIES

1.    Plaintiff Charles Ashworth is the surviving spouse of Mrs. Nicole Ashworth.

2.    Plaintiff Charles Ashworth is an adult individual and at all times relevant to this complaint resided at 4306 Sylvan Drive, Reading, Pennsylvania.

3.    Mrs. Nicole Ashworth was born on July 3, 1983. She died on May 1, 2021.

4.    At the time of her death, Mrs. Ashworth was an adult individual residing at 500 Woodglen Road, Birdsboro, Pennsylvania.

5.    Plaintiff Charles Ashworth is the Administrator of the Estate of Nicole Ashworth, having been granted Letters of Administration by the Berks County, Pennsylvania Register's Office on July 9, 2021. See Short Certificate Letters of Administration, attached as Exhibit A.

6.    Plaintiff brings this action on behalf of his wife's Estate and on behalf of himself and M.A., as beneficiaries under and by virtue of the Wrongful Death Act, 42 Pa. C.S.A. § 8301, the Survival Act, 42 Pa. C.S.A. § 8302 and the applicable Rules of Civil Procedure and decisional law interpreting those acts.

7.    Notice of this action, as required by Pa. R.C.P. 2205, was given to the following heirs-at-law and survivors of decedent Mrs. Nicole Ashworth:

Case ID: 2304027

  a. Mr. Charles Ashworth (widow and father of Mrs. Ashworth's minor child, M.A.).

8. Aziyo Biologic's FiberCel Fiber Viable Bone Matrix was manufactured in 2021 by defendant Aziyo.

9. The FiberCel implant is a fiber-based bone repair product manufactured by defendant Aziyo with input and distribution by Defendants.

10. The FiberCel implant is made of human tissue and is engineered to maintain the characteristics of natural tissue.

11. FiberCel implants are used in orthopedic and reconstructive bone grafting procedures in combination with autologous or allograft bone, or alone as a bone graft.

12. The FiberCel Defendants caused tuberculosis-contaminated FiberCel to be implanted into Mrs. Ashworth, which was a substantial factor in causing her significant pain and suffering and death.

13. Defendant Aziyo Biologics, Inc., is a Delaware corporation with a registered agent for service located at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware. Aziyo's principal place of business is located at 12510 Prosperity Drive, Suite 370, Silver Springs, Maryland.

14. Aziyo does business throughout the United States, including conducting regular business in Pennsylvania and Philadelphia, Pennsylvania, specifically.

15. Aziyo sells a variety of medical products, including implantable electronic devices, orthopedic and spinal repair products, and soft tissue reconstruction products.

16. Aziyo developed, manufactured, promoted, distributed, supplied and sold the FiberCel implant that was implanted into Mrs. Nicole Ashworth and was a substantial factor in causing her significant pain and suffering and death.

17. Defendant Medtronic Sofamor Danek USA, Inc., is a Tennessee corporation with a registered agent for service at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware, and a principal place of business at 2600 Sofamor Danek Drive, Memphis, Tennessee.

18. Medtronic Sofamor Danek USA, Inc., does business throughout the United States, including conducting regular business in Pennsylvania and Philadelphia, Pennsylvania, specifically.

19. Defendant Spinalgraft Technologies, LLC is a limited liability company with a registered agent for service at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware, and its principal place of business at 4340 Swinnea Road Memphis, Tennessee.

20. Spinalgraft Technologies, LLC does business throughout the United States, including conducting regular business in Pennsylvania and Philadelphia, Pennsylvania, specifically.

21. Medtronic Sofamor Danek, Inc., and Spinalgraft Technologies, LLC develop therapeutic and diagnostic medical products.

22. Spinalgraft Technologies, LLC and Medtronic Sofamor Danek, Inc., developed, manufactured, promoted, distributed, supplied and sold the FiberCel implants described in this Complaint.

23. Defendants Medtronic and Aziyo entered into an agreement for Medtronic to be the exclusive distributor FiberCel implants in the United States.

Case ID: 23040279

24.    Medtronic with assistance from Spinalgraft Technologies, LLC, distributed, supplied and sold FiberCel implants, including the implant that was implanted into Mrs. Ashworth and was a substantial factor in causing her significant pain and suffering and death.

25.    Defendant DCI Donor Services, Inc., is a Tennessee corporation with a registered agent for service at Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee and a principal place of business at 566 Mainstream Drive, Suite 300, Nashville, Tennessee.

26.    DCI Donor Services, Inc., is the parent company of defendant New Mexico Donor Services.

27.    DCI Donor Services does business throughout the United States, including conducting regular business in Pennsylvania, including Philadelphia, Pennsylvania, specifically.

28.    Defendant New Mexico Donor Services, Inc., is a New Mexico corporation with a registered agent for service at Corporation Service Company, MC-CSC 1726 East Michigan Drive, Suite 101, Hobbes, New Mexico, and a principal place of business at 1609 University Boulevard NE, Albuquerque, New Mexico.

29.    New Mexico Donor Services, Inc., does business throughout the United States, including conducting regular business in Pennsylvania and Philadelphia, Pennsylvania, specifically.

30.    DCI Donor Services, Inc., and New Mexico Donor Services are human cadaver harvesting companies. They locate, identify and qualify portions of human cadavers for use in surgical procedures, including implantation into living recipients and are required to conduct proper intake, review, qualification and quality control of human body parts for use in living patients.

31.    Defendants DCI Donor Services and New Mexico Donor Services harvested, processed, supplied and sold human tissue for use in the FiberCel implants that were implanted into Mrs. Ashworth and was a substantial factor in causing her significant pain and suffering and death.

32.    Defendant Eurofins Donor & Product Testing, Inc., which was formerly known as Eurofins VRL, is a Colorado corporation with a registered agent for service located at Cogency Global, Inc., 600 North 2nd Street, Harrisburg, Dauphin County, Pennsylvania, and a principal place of business at 6933 South Revere Parkway, Centennial, Colorado, and offices at 401 North 3rd Street, Suite 279, Philadelphia, Pennsylvania.

33.    Eurofins Donor & Product Testing, Inc., does business throughout the United States, including conducting regular business in Pennsylvania and in Philadelphia, Pennsylvania, specifically.

34.    Defendant Eurofins Donor & Product Testing, Incorporated is a corporation engaged in the regular business of testing, consulting and laboratory services for multiple purposes including analytical services, genomic discovery, pharmacology, forensics, clinical studies and donor cadaver blood, bone and tissue analysis, and performed these services for the Defendants and the contaminated FiberCel at issue in this case.

35.    Defendants Aziyo, Medtronic, Spinalgraft, DCI Donor Services, New Mexico Donor Services and Eurofins Donor & Product Testing shall be referred to within this Complaint as the "FiberCel Defendants."

36.    The FiberCel Defendants manufactured, developed, designed, tested, marketed, distributed, promoted, consulted, supplied and otherwise sold FiberCel and the human tissue used in FiberCel to various locations for use in surgeries requiring bone grafting, including to Honor

Health's John C. Lincoln Medical Center, where contaminated FiberCel was surgically implanted into Mrs. Nicole Ashworth, which was a substantial factor in causing her significant pain and suffering and death.

37.    Defendant Reading Hospital is a partnership, corporation or other legal entity, organized and existing under the laws of the Commonwealth of Pennsylvania with a registered office address and principal place of business at 420 South 5th Avenue, Reading, Pennsylvania.

38.    At all times relevant to this Complaint, defendant Reading Hospital owned, maintained, operated and controlled a hospital and medical practices and employed various physicians, residents, fellows, interns, nurses, physician assistants, technicians and other ancillary staff to provide medical care and services to patients, including Mrs. Ashworth, in particular.

39.    The claims asserted against Reading Hospital are for the professional negligence of its actual, apparent and ostensible agents, servants and employees who participated in the care and treatment of Mrs. Ashworth as described in this Complaint.

40.    The negligent acts and omissions of the actual, apparent and ostensible agents, servants and employees of Reading Hospital was a substantial factor in causing Mrs. Ashworth significant pain and suffering and death.

41.    The claims against Reading Hospital include a direct claim for corporate liability under Thompson v. Nason, 591 A.2d 703 (Pa. 1991), and cases further clarifying the corporate negligence doctrine, including Welsh v. Burger, 698 A,2d 581 (Pa. 1997) and Whittington v. Woods, 768 A.2d 1144 (Pa. Super. 2001), for the hospital's own negligent acts and omissions, as described in the Complaint. A certificate of merit as to Reading Hospital will be separately filed with the Court.

Case ID: 230402

42.    Defendant Tower Health is a partnership, corporation or other legal entity, organized and existing under the laws of the Commonwealth of Pennsylvania with a registered office address and principal place of business at 420 South 5th Avenue, Reading, Pennsylvania.

43.    At all times relevant to this Complaint, defendant Tower Health owned, maintained, operated and controlled hospitals and medical practices, including Reading Hospital, and employed various physicians, residents, fellows, interns, nurses, physician assistants, technicians and other ancillary staff to provide medical care and services to patients, including Mrs. Ashworth, in particular.

44.    The claims asserted against Tower Health are for the professional negligence of its actual, apparent and ostensible agents, servants and employees who participated in the care and treatment of Mrs. Ashworth, as described in this Complaint.

45.    The negligent acts and omissions of the actual, apparent and ostensible agents, servants and employees of Tower Health was a substantial factor in causing Mrs. Ashworth significant pain and suffering and death.

46.    The claims against Tower Health include a direct claim for corporate liability under Thompson v. Nason, 591 A.2d 703 (Pa. 1991), and cases further clarifying the corporate negligence doctrine, including Welsh v. Burger, 698 A,2d 581 (Pa. 1997) and Whittington v. Woods, 768 A.2d 1144 (Pa. Super. 2001), for the hospital's own negligent acts and omissions, as described in the Complaint. A certificate of merit as to Tower Health will be separately filed with the Court.

47.    Defendant Tower Health Medical Group is a partnership, corporation or other legal entity, organized and existing under the laws of the Commonwealth of Pennsylvania with a

Case ID: 2304027

registered office address and principal place of business at 420 South 5th Avenue, Reading, Pennsylvania.

48.    At all times relevant to this Complaint, defendant Tower Health Medical Group owned, maintained, operated and controlled a hospital and medical practices and employed various physicians, residents, fellows, interns, nurses, physician assistants, technicians and other ancillary staff to provide medical care and services to patients, including Mrs. Ashworth, in particular.

49.    The claims asserted against Tower Health Medical Group are for the professional negligence of its actual, apparent and ostensible agents, servants and employees who participated in the care and treatment of Mrs. Ashworth as described in this Complaint.

50.    The negligent acts and omissions of the actual, apparent and ostensible agents, servants and employees of Tower Health Medical Group was a substantial factor in causing Mrs. Ashworth significant pain and suffering and death.

51.    The claims against Tower Health Medical Group include a direct claim for corporate liability under Thompson v. Nason, 591 A.2d 703 (Pa. 1991), and cases further clarifying the corporate negligence doctrine, including Welsh v. Burger, 698 A.2d 581 (Pa. 1997) and Whittington v. Woods, 768 A.2d 1144 (Pa. Super. 2001), for the hospital's own negligent acts and omissions, as described in the Complaint. A certificate of merit as to Tower Health Medical Group will be separately filed with the Court.

52.    Defendant David Lamborn, D.O., is an adult individual, who at all relevant times was a citizen and resident of the Commonwealth of Pennsylvania, and a duly-licensed and practicing physician specializing in the field of emergency medicine, with a professional business address of 420 South 5th Avenue, Reading, Pennsylvania.

53.    At all times relevant to this Complaint, defendant Lamborn was engaged in the provision of health care services to patients, including Mrs. Ashworth, at Reading Hospital.

54.    Plaintiff is asserting a professional liability claim against defendant Lamborn in connection with his negligent acts and omissions while caring for Mrs. Ashworth, as well as for the negligent acts of his agents, servants and employees that participated in or were otherwise responsible for Mrs. Ashworth's care at Reading Hospital in 2021. A certificate of merit as to this defendant will be separately filed with the Court.

55.    Defendant Daniel Wimer, PA-C., is an adult individual, who at all relevant times was a citizen and resident of the Commonwealth of Pennsylvania, and a duly-licensed and practicing physician assistant, with a professional business address of 420 South 5th Avenue, Reading, Pennsylvania.

56.    At all times relevant to this Complaint, defendant Wimer was engaged in the provision of health care services to patients, including Mrs. Ashworth, at Reading Hospital.

57.    Plaintiff is asserting a professional liability claim against defendant Wimer in connection with his negligent acts and omissions while caring for Mrs. Ashworth, as well as for the negligent acts of his agents, servants and employees that participated in or were otherwise responsible for Mrs. Ashworth's care at Reading Hospital in April 2021. A certificate of merit as to this defendant will be filed separately with the Court.

58.    Defendant Ankit Shah, M.D., is an adult individual, who at all relevant times was a citizen and resident of the Commonwealth of Pennsylvania, and a duly-licensed and practicing physician specializing in the field of emergency medicine, with a professional business address of 420 South 5th Avenue, Reading, Pennsylvania.

59.    At all times relevant to this Complaint, defendant Shah was engaged in the provision of health care services to patients, including Mrs. Ashworth, at Reading Hospital.

60.    Plaintiff is asserting a professional liability claim against defendant Shah in connection with his negligent acts and omissions while caring for Mrs. Ashworth, as well as for the negligent acts of his agents, servants and employees that participated in or were otherwise responsible for Mrs. Ashworth's care at Reading Hospital in 2021. A certificate of merit as to this defendant will be separately filed with the Court.

61.    Defendant Adam Sigal, M.D., is an adult individual, who at all relevant times was a citizen and resident of the Commonwealth of Pennsylvania, and a duly-licensed and practicing physician with a specialty in emergency medicine, with a professional business address of 420 South 5th Avenue, Reading, Pennsylvania.

62.    At all times relevant to this Complaint, defendant Sigal was engaged in the provision of health care services to patients, including Mrs. Ashworth, at Reading Hospital.

63.    Plaintiff is asserting a professional liability claim against defendant Sigal in connection with his negligent acts and omissions while caring for Mrs. Ashworth, as well as for the negligent acts of his agents, servants and employees that participated in or were otherwise responsible for Mrs. Ashworth's care at Reading Hospital in 2021. A certificate of merit as to this defendant will be separately filed with the Court.

64.    Defendant Chad Roarabaugh, PA-C., is an adult individual, who at all relevant times was a citizen and resident of the Commonwealth of Pennsylvania, and a duly-licensed and practicing physician assistant, with a professional business address of 420 South 5th Avenue, Reading, Pennsylvania.

65. At all times relevant to this Complaint, defendant Roarabaugh was engaged in the provision of health care services to patients, including Mrs. Ashworth, at Reading Hospital.

66. Plaintiff is asserting a professional liability claim against defendant Roarabaugh in connection with his negligent acts and omissions while caring for Mrs. Ashworth, as well as for the negligent acts of his agents, servants and employees that participated in or were otherwise responsible for Mrs. Ashworth's care at Reading Hospital in 2021. A certificate of merit as to this defendant will be separately filed with the Court.

67. Defendant Main Line Hospitals, Inc., d/b/a Paoli Hospital is a partnership, corporation or other legal entity, organized and existing under the laws of the Commonwealth of Pennsylvania with a registered office address and principal place of business at 255 West Lancaster Avenue, Paoli, Pennsylvania

68. At all times relevant to this Complaint, defendant Main Line Hospitals, Inc., owned, maintained, operated and controlled a hospital and medical practices and employed various physicians, residents, fellows, interns, nurses, physician assistants, technicians and other ancillary staff to provide medical care and services to patients, including Mrs. Ashworth, in particular.

69. The claims asserted against Main Line Hospitals, Inc., are for the professional negligence of its actual, apparent and ostensible agents, servants and employees who participated in the care and treatment of Mrs. Ashworth as described in this Complaint.

70. The negligent acts and omissions of the actual, apparent and ostensible agents, servants and employees of Main Line Hospitals, Inc., was a substantial factor in causing Mrs. Ashworth significant pain and suffering and death.

71. The claims against Main Line Hospitals, Inc., include a direct claim for corporate liability under Thompson v. Nason, 591 A.2d 703 (Pa. 1991), and cases further clarifying the

corporate negligence doctrine, including <u>Welsh v. Burger</u>, 698 A,2d 581 (Pa. 1997) and <u>Whittington v. Woods</u>, 768 A.2d 1144 (Pa. Super. 2001), for the hospital's own negligent acts and omissions, as described in the Complaint. A certificate of merit as to Main Line Hospitals, Inc., d/b/a Paoli Hospital will be separately filed with the Court.

72.     Defendant Main Line Healthcare is a partnership, corporation or other legal entity, organized and existing under the laws of the Commonwealth of Pennsylvania with a registered office address and principal place of business at 3803 West Chester Pike, Newtown Square, Pennsylvania.

73.     At all times relevant to this Complaint, defendant Main Line Healthcare owned, maintained, operated and controlled a hospital and medical practices and employed various physicians, residents, fellows, interns, nurses, physician assistants, technicians and other ancillary staff to provide medical care and services to patients, including Mrs. Ashworth, in particular.

74.     The claims asserted against Main Line Healthcare are for the professional negligence of its actual, apparent and ostensible agents, servants and employees who participated in the care and treatment of Mrs. Ashworth as described in this Complaint.

75.     The negligent acts and omissions of the actual, apparent and ostensible agents, servants and employees of Main Line Healthcare was a substantial factor in causing Mrs. Ashworth significant pain and suffering and death.

76.     The claims against Main Line Healthcare include a direct claim for corporate liability under <u>Thompson v. Nason</u>, 591 A.2d 703 (Pa. 1991), and cases further clarifying the corporate negligence doctrine, including <u>Welsh v. Burger</u>, 698 A,2d 581 (Pa. 1997) and <u>Whittington v. Woods</u>, 768 A.2d 1144 (Pa. Super. 2001), for the hospital's own negligent acts and

omissions, as described in the Complaint. A certificate of merit as to Main Line Healthcare will be separately filed with the Court.

77.    Defendant Main Line Health System is a partnership, corporation or other legal entity, organized and existing under the laws of the Commonwealth of Pennsylvania with a registered office address and principal place of business at 240 North Radnor-Chester Road, Radnor, Pennsylvania 19087.

78.    At all times relevant to this Complaint, defendant Main Line Health System owned, maintained, operated and controlled a hospital and medical practices and employed various physicians, residents, fellows, interns, nurses, physician assistants, technicians and other ancillary staff to provide medical care and services to patients, including Mrs. Ashworth, in particular.

79.    The claims asserted against Main Line Health System are for the professional negligence of its actual, apparent and ostensible agents, servants and employees who participated in the care and treatment of Mrs. Ashworth as described in this Complaint.

80.    The negligent acts and omissions of the actual, apparent and ostensible agents, servants and employees of Main Line Health System was a substantial factor in causing Mrs. Ashworth significant pain and suffering and death.

81.    The claims against Main Line Health System include a direct claim for corporate liability under Thompson v. Nason, 591 A.2d 703 (Pa. 1991), and cases further clarifying the corporate negligence doctrine, including Welsh v. Burger, 698 A,2d 581 (Pa. 1997) and Whittington v. Woods, 768 A.2d 1144 (Pa. Super. 2001), for the hospital's own negligent acts and omissions, as described in the Complaint. A certificate of merit as to Main Line Health System will be separately filed with the Court.

82.    Defendant Mitchell Drake, M.D., is an adult individual, who at all relevant times was a citizen and resident of the Commonwealth of Pennsylvania, and a duly-licensed and practicing physician specializing in the field of emergency medicine, with a professional business address of Main Line Healthcare, 3803 West Chester Pike, Newtown Square, Pennsylvania or Paoli Hospital, 255 West Lancaster Avenue, Paoli, Pennsylvania.

83.    At all times relevant to this Complaint, defendant Drake was engaged in the provision of health care services to patients, including Mrs. Ashworth, at Paoli Hospital.

84.    Plaintiff is asserting a professional liability claim against defendant Drake in connection with his negligent acts and omissions while caring for Mrs. Ashworth, as well as for the negligent acts of his agents, servants and employees that participated in or were otherwise responsible for Mrs. Ashworth's care at Paoli Hospital in 2021. A certificate of merit as to this defendant will be separately filed with the Court.

85.    Defendant Jessica Rae Viola, PA-C, is an adult individual, who at all relevant times was a citizen and resident of the Commonwealth of Pennsylvania, and a duly-licensed and practicing physician assistant, with a professional business address of Main Line Healthcare, 3803 West Chester Pike, Newtown Square, Pennsylvania or Paoli Hospital, 255 West Lancaster Avenue, Paoli, Pennsylvania.

86.    At all times relevant to this Complaint, defendant Viola was engaged in the provision of health care services to patients, including Mrs. Ashworth, at Paoli Hospital.

87.    Plaintiff is asserting a professional liability claim against defendant Viola in connection with his negligent acts and omissions while caring for Mrs. Ashworth, as well as for the negligent acts of his agents, servants and employees that participated in or were otherwise

responsible for Mrs. Ashworth's care at Paoli Hospital in 2021. A certificate of merit as to this defendant will be separately filed with the Court.

88.    Defendant Joseph C. Li, M.D., is an adult individual, who at all relevant times was a citizen and resident of the Commonwealth of Pennsylvania, and a duly-licensed and practicing physician specializing in the field of neurology, with a professional business address of Main Line Healthcare, 3803 West Chester Pike, Newtown Square, Pennsylvania or Paoli Hospital, 255 West Lancaster Avenue, Paoli, Pennsylvania.

89.    At all times relevant to this Complaint, defendant Li was engaged in the provision of health care services to patients, including Mrs. Ashworth, at Paoli Hospital.

90.    Plaintiff is asserting a professional liability claim against defendant Li in connection with his negligent acts and omissions while caring for Mrs. Ashworth, as well as for the negligent acts of his agents, servants and employees that participated in or were otherwise responsible for Mrs. Ashworth's care at Paoli Hospital in 2021. A certificate of merit as to this defendant will be separately filed with the Court.

91.    At all times material to this complaint, the Defendants' actual, apparent and ostensible agents, servants and employees were acting within the course and scope of their agency or employment during their care of and legal relationship with Mrs. Ashworth. Accordingly, Defendants are liable for the negligent, careless and reckless acts and omissions of their authorized servants, employees, contractors, consultants and actual or ostensible agents under theories of *respondeat superior*, master-servant, agency and right of control.

92.    The negligence, carelessness and recklessness of all Defendants and their agents, servants and employees, individually, jointly and severally caused, contributed to or increased the

risk of harm to Mrs. Ashworth and were a substantial factor in causing her significant pain and suffering and death.

93.    The catastrophic injuries of Mrs. Ashworth were caused by the negligent, careless and reckless acts and omissions of all Defendants and their agents, each of which were a substantial factor in causing her significant pain and suffering and death.

94.    Mrs. Ashworth's injuries were not caused by any act or failure to act on the part of Mrs. Ashworth or Plaintiff.

95.    At all relevant times, Reading Hospital, Tower Health, Tower Health Medical Group, Main Line Hospitals, Inc., Main Line Health System, Main Line Healthcare, and defendants Lamborn, Wimer, Shah, Sigal, Roarabaugh, Drake, Viola and Li had actual or constructive knowledge and notice of the medical and professional care and treatment provided to Mrs. Ashworth, including the policies, procedures, directives, rules and other statements and descriptions regarding the standards of care.

96.    At all relevant times, Reading Hospital, Tower Health, Tower Health Medical Group, Main Line Hospitals, Inc., Main Line Health System, Main Line Healthcare, and defendants Lamborn, Wimer, Shah, Sigal, Roarabaugh, Drake, Viola and Li had actual or constructive knowledge of the negligent acts and omissions of their agents, servants and employees in the care, treatment and management of Mrs. Ashworth, as described in this Complaint.

97.    At all relevant times, Mrs. Ashworth looked to Reading Hospital, Tower Health, Tower Health Medical Group, Main Line Hospitals, Inc., Main Line Health System, Main Line Healthcare, and defendants Lamborn, Wimer, Shah, Sigal, Roarabaugh, Drake, Viola and Li, to provide her with safe and proper medical care.

98.    At all relevant times, Mrs. Ashworth believed that the physicians, physician assistants and other medical providers assigned to her care in April 2021 were employed by Reading Hospital, Tower Health, Tower Health Medical Group, Main Line Hospitals, Inc., Main Line Health System or Main Line Healthcare.

99.    Reading Hospital, Tower Health, Tower Health Medical Group, Main Line Hospitals, Inc., Main Line Health System and Main Line Healthcare selected and assigned to Mrs. Ashworth physicians, physician assistants and other healthcare providers to monitor and manage her care in April 2021, and to make decisions with respect to the timing and interventions necessary to treat her injuries. These physicians, physician assistants and healthcare providers were not properly skilled nor were they adequately trained to manage patients with Mrs. Ashworth's presenting signs and symptoms.

100.    At no time did Mrs. Ashworth select any of the physicians, physician assistants or other providers responsible for her care, treatment and management at Reading or Paoli Hospital.

101.    The negligence of Reading Hospital, Tower Health, Tower Health Medical Group, Main Line Hospitals, Inc., Main Line Health System, Main Line Healthcare, and defendants Lamborn, Wimer, Shah, Sigal, Roarabaugh, Drake, Viola and Li and their actual and ostensible agents, servants and employees caused or increased the risk of harm to Mrs. Ashworth and were substantial factors in causing her significant pain and suffering, disfigurement and humiliation, economic damages, other losses and death.

102.    Reading Hospital, Tower Health, Tower Health Medical Group, Main Line Hospitals, Inc., Main Line Health System, Main Line Healthcare, and defendants Lamborn, Wimer, Shah, Sigal, Roarabaugh, Drake, Viola and Li are vicariously liable for injuries and losses sustained because of the negligent acts and omissions of persons or entities whose conduct was

under their supervision, control or right of control, and which conduct increased the risk of and, in fact, were a contributing cause to Mrs. Ashworth's significant pain and suffering and death.

103.    All Defendants acted directly or through their authorized agents, servants, consultants, contractors and employees, who themselves were acting within the course and scope of their employment or agency with one or more of the Defendants.

104.    Reading Hospital, Tower Health, Tower Health Medical Group, Main Line Hospitals, Inc., Main Line Health System and Main Line Healthcare engaged as their actual, apparent, and ostensible agents, servants and employees various healthcare providers, physicians, residents, fellows, physician assistants, nurses and other ancillary staff who provided, participated in and were responsible for the care, treatment and management of Mrs. Ashworth, who were always acting within the course and scope of their agency and employment with one or more of these Defendants and under their exclusive control.

105.    Reading Hospital, Tower Health, Tower Health Medical Group are liable for the negligent acts and omissions of their actual, apparent and ostensible agents, servants and employees under theories of respondeat superior, master-servant, agency and right of control. The identities of these agents, servants and employees, to the best of Plaintiffs' knowledge after reasonable pre-suit investigation, include but are not limited to David Lamborn, D.O., Abin Bandyopadhyay, M.D., Anthony Licata, M.D., Daniel Wilmer, PA-C, Ankit Shah, M.D., Adam Sigal, M.D., and Chad Roarabaugh, PA-C,

106.    Main Line Hospitals, Inc., Main Line Health System and Main Line Healthcare are liable for the negligent acts and omissions of their actual, apparent and ostensible agents, servants and employees under theories of respondeat superior, master-servant, agency and right of control. The identities of these agents, servants and employees, to the best of Plaintiffs' knowledge after

reasonable pre-suit investigation, include but are not limited to Mitchell S. Drake, M.D., Jessica Rae Viola, PA-C, and Joseph C. Li, M.D.

107.    At all times, David Lamborn, D.O., Abin Bandyopadhyay, M.D., Daniel Wilmer, PA-C, Ankit Shah, M.D., Adam Sigal, M.D., Chad Roarabaugh, PA-C, Anthony Licata, M.D., Mitchell S. Drake, M.D., Jessica Rae Viola, PA-C, and Joseph C. Li, M.D. were the actual, apparent or ostensible agents or employees of one or more of the Defendants, and were acting within the scope of their agency or employment with one or more of the Defendants while providing care and treatment to Mrs. Ashworth.

108.    Reading Hospital, Tower Health, Tower Health Medical Group, Main Line Hospitals, Inc., Main Line Health System, and Main Line Healthcare are vicariously liable for the negligent acts and omissions of the individuals identified in the preceding paragraphs under theories of *respondeat superior*, master-servant, agency and right of control.

109.    Reading Hospital's, Tower Health's, Tower Health Medical Group's, Main Line Hospitals, Inc.'s, Main Line Health System's and Main Line Healthcare's agents also include those physicians, residents, fellows, physician assistants, nurse practitioners, nurses, technicians and other ancillary staff who participated in, were consulted about or otherwise were responsible for the care, treatment and management of Mrs. Ashworth whose names or handwriting appear in the medical charts, but are indecipherable or not known or knowable to Plaintiff after reasonable pre-suit investigation, or whose notes do not appear in the chart, but who were consulted about the condition or treatment of Mrs. Ashworth by others whose names do appear in the medical chart. The identities of these individuals are known only to Defendants and will require additional discovery from defendants as the litigation proceeds.

110.    At all relevant times, Reading Hospital, Tower Health, Tower Health Medical Group, Main Line Hospitals, Inc., Main Line Health System, and Main Line Healthcare and their agents, servants, and employees engaged in the practice of medicine and ancillary medical care services while pursuing their respective specialties and health care duties. These agents, servants, and employees had a duty to use their professional skill and knowledge and should have possessed the necessary and requisite skills to pursue their professional responsibilities in accordance with reasonably safe and accepted standards of medicine and professional care in general and during the care of Mrs. Ashworth.

111.    Reading Hospital's, Tower Health's, Tower Health Medical Group's, Main Line Hospitals, Inc.'s, Main Line Health System's, and Main Line Healthcare's agents also included those physicians, residents, fellow, interns, physician assistants, nurse practitioners, nurses, perfusionists, and other ancillary staff who participated in, were consulted about or were otherwise responsible for the evaluation, assessment, work-up, diagnosis, management, treatment and clinical decision-making with respect to Mrs. Ashworth.

## JURISDICTION AND VENUE

112.    This Court has jurisdiction over each defendant because each defendant either has its principal place of business in Pennsylvania, is incorporated in Pennsylvania, is registered to do business in Pennsylvania, has consented to jurisdiction in Pennsylvania, or does sufficient business in or has sufficient minimum contacts with or otherwise intentionally avails itself of the markets of the Commonwealth of Pennsylvania through its business operations in Pennsylvania.

113.    Venue is proper in Philadelphia County pursuant to Pa. R.C.P. 1006 and 2179 because one or more of these Defendants regularly conducts business in Philadelphia or may be served there.

Case ID: 23040279

114.    At all relevant times, one or more defendants had its registered office in Philadelphia County or regularly conducted and continues to regularly conduct business and has sufficient minimum contacts with Philadelphia, Pennsylvania through business operations and services provided in Philadelphia, Pennsylvania, including but not limited to:

    a.  regularly conducting business in Philadelphia County for many years through the operation of one or more offices or business units in this geographic location;

    b.  consenting to, benefiting from, utilizing or availing itself of the jurisdiction and venue of Philadelphia, Pennsylvania including in prior and current litigation; and

    c.  operating, owning, managing and benefiting from multiple business locations in Philadelphia, Pennsylvania.

115.    At all times relevant to this Complaint, Defendants directly or indirectly engaged in the business of manufacturing, testing, marketing, consulting on, selling or distributing products, including but not limited to FiberCel or the human tissues used in FiberCel within the Commonwealth of Pennsylvania, with a reasonable expectation that their product would be used in Pennsylvania, causing Defendants to regularly conduct business in Pennsylvania.

116.    The amount in controversy exceeds local arbitration limits.

117.    This Court has proper jurisdiction over this civil action pursuant to 42 Pa. C.S. § 5301.

## FACTS

118.    In March 2021, Mrs. Ashworth underwent back surgery.

119.    During Mrs. Ashworth's surgery, surgeons implanted FiberCel from Donor Lot Number NMDS210011.

120.    The FiberCel product implanted into Mrs. Ashworth was contaminated with tuberculosis.

121.    On April 26, 2021, Mrs. Ashworth presented to the Emergency Room at defendant Reading Hospital with complaints of a "bilateral frontal, squeezing headache that is 9/10 and has been present for 5 days."

122.    On April 26, 2021, Mrs. Ashworth informed her care team, which included Nicole Angstadt, Jasmine Aydin, R.N., Leah Gable, R.N., Vanessa Hetrick, R.N. and David Lamborn, D.O., that she had no prior history of migraines or serious headache.

123.    On April 26, 2021, Mrs. Ashworth made her healthcare providers aware of her recent spine surgery, post-surgical complications and infection.

124.    On April 26, 2021, defendant Lamborn documented Mrs. Ashworth's prior history of symptoms of "likely sinusitis" that was treated with steroids "but not antibiotics" with no improvement of headache.

125.    On April 26, 2021, defendant Lamborn considered meningitis as a potential cause of Mrs. Ashworth's symptoms.

126.    In deviation from the standard of care, defendant Lamborn failed to fully consider, diagnose, manage or treat the cause of Mrs. Ashworth's headache and hypertension, the delay of which was a substantial factor in causing her significant pain and suffering and death.

127.    Instead, defendant Lamborn deviated from the standard of care by ordering a "migraine cocktail" and instructed Mrs. Ashworth to follow-up with her primary care physician for outpatient management.

128.    The next day, April 27, 2021, Mrs. Ashworth returned to the Emergency Room at defendant Reading Hospital and complained of the same symptoms from April 26, but was now experiencing lightheadedness, wooziness, severe headache with neck movement, shortness of breath, and body aches.

129.    On April 27, 2021, Mrs. Ashworth's care team consisted of Deborah Dreibelbis, Christina Connell, Daniel Wimer, PA-C, Joseph King, R.N., Glenn Perez, R.N., Brian Flannery, R.N., Brooke Raifsnider, R.N., and Ankit Shah, M.D.

130.    On April 27, 2021, Mrs. Ashworth informed her care team that her symptoms had returned and now she had new symptoms.

131.    On April 27, 2021, Mrs. Ashworth informed her care team of her spinal surgery and its complications.

132.    On April 27, 2021, despite her care team having considered meningitis as the cause of her headache at the April 26, 2021, emergency room visit, Mrs. Ashworth's care team, in deviation from the standard of care, failed to investigate the cause of her headache, hypertension, elevated white blood cell count, anemia, hypokalemia, leukocytosis, neutrophilia and elevated d-dimer.

133.    Instead, at the April 27, 2021, visit, Mrs. Ashworth's care team focused on only one of her new symptoms: her shortness of breath.

134.    PA Wimer ordered Mrs. Ashworth to undergo chest imaging to rule out a pulmonary embolism due to slightly elevated d-dimer but ordered no imaging or studies to investigate the cause of her headache, which continued unabated despite prior treatment.

135.    PA Wimer ordered diagnostic testing, including an electrocardiogram that was interpreted by Anthony Licata, M.D.

136.    The interpretations of Mrs. Ashworth's April 27, 2021, imaging study and electrocardiogram did not explain why she was experiencing recurrent new onset 10/10 headaches that did not resolve despite treatment, or any of her other vital sign, diagnostic test and lab abnormalities.

137.    PA Wimer's failure to order additional imaging, studies, testing, labs and cultures to further investigate the cause of Mrs. Ashworth's headache, which was her principal complaint and reason for presenting to the Reading Hospital Emergency Department, or any of her other vital sign, diagnostic and lab abnormalities, was a deviation from the standard of care that delayed life-saving treatment and was a substantial factor in causing Mrs. Ashworth's significant pain and suffering and death.

138.    PA Wimer, in deviation from the standard of care, ordered Mrs. Ashworth to be administered steroids and discharged with instructions to rest and hydrate.

139.    In deviation from the standard of care, defendant Shah failed to fully consider, diagnose, manage or treat the cause of Mrs. Ashworth's headache, or any of her other vital sign, diagnostic or lab abnormalities, and co-signed that he agreed with all PA-Wimer's medical decision making, which delayed life-saving treatment and was a substantial factor in causing significant pain and suffering and Mrs. Ashworth's death.

140.    The next day, April 28, 2021, Mrs. Ashworth presented to the Emergency Room at Paoli Hospital.

141.    On April 28, 2021, Mrs. Ashworth's care team consisted of defendants Mitchell S. Drake, M.D., Jessica Rae Viola, PA-C, and Joseph C. Li, M.D.

142.    On April 28, 2021, Mrs. Ashworth informed her care team that this was her third emergency department visit in 3 days for her "vice like" headache.

143.    On April 28, 2021, Mrs. Ashworth had additional new symptoms that were documented as "headache due to cervicogenic," "intractable migraine headache with aura" and "throbbing headache, entire head, bifrontal, associated photo phonophobia, nausea, daily vomiting. Currently 10 out of 10, with slight relief with Toradol/Reglan/Benadryl cocktail."

144.    On April 28, 2021, at Paoli Hospital, Mrs. Ashworth demonstrated hypertension, low body temperature, leukocytosis, neutrophilia, leukopenia and low calcium.

145.    On April 28, 2021, Mrs. Ashworth reported to her care team at defendant Paoli Hospital that she had been seen on April 26, 2021, and April 27, 2021, and discharged to home.

146.    On April 28, 2021, Mrs. Ashworth explained that the medications were no longer providing relief and that she was hoping to "get answers" concerning her headaches.

147.    On April 28, 2021, defendant Viola consulted with defendant Li concerning Mrs. Ashworth's concerning symptoms because this was her "third ER visit in three days."

148.    On April 28, 2021, defendant Viola documented that Mrs. Ashworth was "frustrated" and that Mrs. Ashworth knew, from her symptomology, that if "she is discharged she will wind up back here."

149.    Despite Mrs. Ashworth's documented complaints that her headaches were so severe that she knew she would have to return to the emergency department if discharged, defendants Viola, Drake and Li deviated from the standard of care when they failed to fully consider, diagnose, manage or treat the cause of Mrs. Ashworth's headache, vital sign and lab abnormalities, the delay of which was a substantial factor in causing Mrs. Ashworth's significant pain and suffering and death.

150.    In deviation from the standard of care, defendant Li and "the ED resident" masked Mrs. Ashworth's severe headache symptoms with nerve blocks without fully considering, diagnosing, managing or treating the cause of Mrs. Ashworth's headache and lab and vital sign abnormalities, the delay of which was a substantial factor in causing Mrs. Ashworth significant pain and suffering and death.

151.   In deviation from the standard of care, defendant Viola and Drake discharged Mrs. Ashworth without fully considering, diagnosing, managing or treating the cause of Mrs. Ashworth's headache, low blood pressure, lab abnormalities or hypertension, the delay of which was a substantial factor in causing her significant pain and suffering and death.

152.   On April 28, 2021, in response to her 10/10 pain, defendant Li placed anesthetic nerve blocks and discharged Mrs. Ashworth home with a prescription for migraine medication, despite failing to discover the cause of Mrs. Ashworth's recurrent headache pain.

153.   Defendants Drake, Viola and Li, in deviation from the standard of care, failed to fully consider, diagnose, manage or treat the cause of Mrs. Ashworth's headache and lab and vital sign abnormalities, the delay of which was a substantial factor in causing Mrs. Ashworth's significant pain and suffering and death.

154.   On April 29, 2021, Mrs. Ashworth returned to the Emergency Room for "lightheadedness and severe intermittent frontal headache."

155.   On April 29, 2021, Mrs. Ashworth arrived at 4:23 a.m. via Chester EMS.

156.   On April 29, 2021, Mrs. Ashworth informed her healthcare team, which consisted of defendants Sigal, Roarabaugh, PA-C, Holly Wasilewski, Amanda Crawford, Jason Colby, R.N., Rebecca Rinehart, R.N., Mallory Seasock, R.N., and Corissa Krall, R.N., that the trigger point injections at Paoli Emergency Department were no longer providing relief.

157.   On April 29, 2021, defendants Sigal and Roarabaugh deviated from the standard of care when they failed to fully consider, diagnose, manage or treat the cause of Mrs. Ashworth's headache and lab and vital sign abnormalities, the delay of which was a substantial factor in causing Mrs. Ashworth's significant pain and suffering and death.

158.   On April 29, 2021, defendants Sigal and Roarabaugh deviated from the standard of care when they failed to fully evaluate, obtain, analyze and perform Mrs. Ashworth's history of present illness, vital signs, physical exam, history and laboratory results.

159.   On April 29, 2021, healthcare providers treated her headache with a "headache cocktail" and discharged Mrs. Ashworth to home.

160.   Across the four emergency department visits in April 2021, defendants Reading Hospital, Tower Health, Tower Health Medical Group, Main Line Hospitals, Inc., d/b/a Paoli Hospital, Main Line Health System and Main Line Healthcare, by and through their agents and employees, including but not limited to David Lamborn, D.O., Daniel Wimer, PA-C, Ankit Shah, M.D., Adam Sigal, M.D., Chad Roarabaugh, PA-C, Mitchell Drake, M.D., Jessica Rae Viola, PA-C, and Joseph C. Li, M.D., negligently failed to fully appreciate, consider, evaluate, rule-out, work-up, diagnose and treat Mrs. Ashworth for meningitis and negligently failed to order tests, imaging, labs, bloodwork and cultures to evaluate and treat Mrs. Ashworth for meningitis or the other potential causes of her severe intractable headache pain that could and was a substantial contributing cause to her imminent death.

161.   On April 30, 2021, Mrs. Ashworth described her headaches as "knives going thru her eyes."

162.   On May 1, 2021, Mrs. Ashworth's mother and Mrs. Ashworth's 5-year-old son discovered Mrs. Ashworth unresponsive.

163.   On May 1, 2021, at 4:37 p.m., first responders pronounced Mrs. Ashworth dead. She was 37-years-old.

164.   Authorities told Plaintiff that Mrs. Ashworth's death was the result of an opioid overdose.

165.    On May 3, 2021, Plaintiff notified Mrs. Ashworth's surgeon of her death.

166.    On or about June 10, 2021, Medtronic representative Vincent Buie contacted Mrs. Ashworth's surgeon and informed the surgeon that there had been a recall on the lot of FiberCel allograft that had been implanted in Mrs. Ashworth because it was infected with tuberculosis.

167.    On or about June 10, 2021, Mrs. Ashworth's surgeon contacted Plaintiff and informed him of the Medtronic recall.

168.    On June 17, 2021, Mrs. Ashworth's toxicology report showed that she did not die of a drug overdose. The Berks County Coroner contacted Plaintiff to inform him that Mrs. Ashworth did not die because of an opioid overdose.

169.    Mrs. Ashworth died because the FiberCel Defendants caused contaminated FiberCel to be implanted into her body and when she presented to defendants Reading Hospital and Paoli Hospital, healthcare providers at both institutions negligently discharged without investigating the cause of her recurrent extreme headaches despite their failure to respond to treatment.

170.    Mrs. Ashworth would not have died but for the Defendants negligence, carelessness and recklessness.

171.    Mrs. Ashworth, Plaintiff and M.A. suffered significant injuries, including but not limited to Mrs. Ashworth's excruciating pain and physical damages and the profound emotional and psychological loss suffered by Mrs. Ashworth's husband, son and mother.

172.    The carelessness, negligence and recklessness of the Defendants, individually, jointly and severally, as described in this Complaint, substantially increased the risk of harm to Mrs. Ashworth and did, in fact, cause Mrs. Ashworth to suffer catastrophic injuries, death and other damages.

173.    As a direct result of the carelessness, negligence and recklessness of Defendants, Mrs. Ashworth, Plaintiff and M.A. were exposed to an increased risk of harm and died, causing injuries including but not limited to:

a.  physical pain and discomfort;
b.  suffering;
c.  mental anguish;
d.  fear;
e.   severe emotional distress;
f.  embarrassment;
g.  humiliation;
h.  past and future loss of enjoyment of life and life's pleasures;
i.  past and future inability to participate in or perform activities of daily living, occupations and avocations;
j.  impaired earning capacity;
k.  loss of earning capacity;
l.  lost wages;
m.  past and future medical expenses for medications, medical and surgical care; therapy, services, equipment, and other care to treat, alleviate, minimize or otherwise treat any conditions or disabilities;
n.  such other injuries documented in the medical records and evaluative reports of physicians, other medical and non-medical professionals who may provide care to Plaintiff, M.A., or Mrs. Ashworth's other wrongful death beneficiaries;
o.  temporary relocation and childcare costs.

174.    Mrs. Ashworth would not have suffered the catastrophic physical injuries and losses she did but for the combined impact of the healthcare provider defendants' medical negligence and the FiberCel Defendants' failure to make FiberCel safe for consumers.

175.    The catastrophic injuries suffered by Mrs. Ashworth and Plaintiff were caused by the careless, negligent and reckless acts and omissions of Defendants, their agents, servants and employees, as described in this Complaint and identified through discovery.

176.    The catastrophic injuries suffered by Mrs. Ashworth and Plaintiff were not caused by any act or failure to act on the part of Mrs. Ashworth or Plaintiff.

177. As a result of the negligence, carelessness and recklessness of Defendants, Mrs. Ashworth and Plaintiff have suffered or will continue to suffer substantial economic and non-economic injuries, damages and losses, including but not limited to past and future medical, mental health-related and other expenses relating to the treatment of the injuries suffered, including but not limited to past and future depression, anxiety, severe emotional distress, past and future physical manifestations of severe emotional distress and other such injuries and damages as described in this Complaint and the medical records.

**FiberCel**

178. FiberCel is the trade name for the Fiber Viable Bone Matrix, a product made from human tissue consisting of cancellous bone particles with preserved cells, combined with demineralized cortical fiber.

179. Defendants DCI Donor Services and New Mexico Donor Services harvested the human tissue donor that contributed to Donor Lot Number NMDS210011.

180. Defendant Eurofins Donor & Product Testing, Inc., which was formerly known as Eurofins VRL developed the testing materials, consulted with the other Defendants on testing methods and tested the human tissue donor that contributed to Donor Lot Number NMDS210011.

181. FiberCel is designed to substitute natural tissue as a bone void filler in various orthopedic and spinal procedures.

182. FiberCel allografts contain the scaffold, growth factors and cells required for regeneration, allowing for bone formation.

183. Defendants marketed or knew that FiberCel would be marketed for use in orthopedic and reconstructive bone grafting surgeries using autologous bone, other forms of allograft bone or alone as a bone graft.

184.    Defendants knew or should have known that FiberCel was made with donor tissue.

185.    Defendants knew or should have known that FiberCel was made with growth factor cells.

186.    On June 20, 2019, defendants Aziyo and Medtronic entered an exclusive, multi-year distribution agreement for the United States marketplace.

187.    As a part of the agreement between defendants Aziyo and Medtronic, Aziyo was to manufacture and supply FiberCel to Medtronic for distribution.

188.    On June 2, 2021, the United States Food & Drug Administration issued an urgent voluntary recall of FiberCel.

189.    The FDA recall applied to products from Donor Lot Number NMDS210011.

190.    Defendants Aziyo and Medtronic recalled the products because numerous patients tested positive for tuberculosis and post-surgical infections after surgical implantation of FiberCel.

191.    More than 150 lots of contaminated FiberCel products were recalled from more than 20 states.

192.    The Defendants recalled FiberCel after Mrs. Ashworth's death.

193.    Defendants' failure to timely recall the product caused Mrs. Ashworth's tuberculosis to go undiagnosed and her death.

194.    Defendants admit that patients received tuberculosis contaminated FiberCel from the same lot of FiberCel that Mrs. Ashworth received.

195.    Defendants admit that tuberculosis can be transmitted to a patient through FiberCel implantation.

## COUNT ONE – STRICT PRODUCTS LIABILITY
**Plaintiff v. Defendants Aziyo Biologics, Incorporated, Medtronic Sofamor Danek USA, Inc., Spinalgraft Technologies LLC, DCI Donor Services, Inc., New Mexico Donor Services, Inc., and Eurofins Donor & Product Testing, Inc., f/k/a Eurofins VRL**

196.    Defendants, individually or by and through their respective employees, agents, servants, subsidiaries, groups, divisions, acquired/affiliated companies, corporations or businesses, at all times relevant to this Complaint, were engaged in the design, testing, manufacturing, distribution or sale of FiberCel, including the contaminated FiberCel implanted into Mrs. Ashworth.

197.    Defendants harvested and processed human cadavers and sold and distributed human tissue into the stream of commerce for use in the contaminated FiberCel.

198.    Defendants' quality control should have, but failed to, discover that the cadaver and human tissue sold for use in FiberCel lot was contaminated with tuberculosis.

199.    FiberCel was defective in its manufacture in that the FiberCel units were contaminated with tuberculosis because of contaminated human tissue, which was then transmitted to patients, including Mrs. Ashworth, who was implanted with the contaminated FiberCel.

200.    The FiberCel unit manufactured by Aziyo and Medtronic, containing contaminated human tissue that was harvested and sold by Defendants and implanted into Mrs. Ashworth, was unsafe, defective, and unreasonably dangerous before it left Defendants' possession, and was in the same condition when implanted into Mrs. Ashworth as it was when it was placed into the stream of commerce by Defendants.

201.    Defendants knew or should have known, based on the industry and scientific knowledge available at the time of its manufacture and distribution, that selling human tissue

contaminated with tuberculosis for use in FiberCel was defective, unsafe and unreasonably dangerous to FiberCel users, patients and consumers, including Mrs. Ashworth.

202.    Ordinary consumers, including Mrs. Ashworth, could not and would not have recognized the potential defects, risks, and dangers of contaminated FiberCel.

203.    As a result of Mrs. Ashworth's use of the defective FiberCel, containing human tissue that was harvested, processed, and sold by Defendants, as manufactured, designed, sold, supplied, and distributed into the stream of commerce by the Defendants, Mrs. Ashworth contracted tuberculosis, which caused Mrs. Ashworth to suffer harm, damages, economic loss, and death.

204.    Defendants' quality control should have, but failed to discover that the FiberCel Donor lot that contained the implant used on Mrs. Ashworth was contaminated.

205.    The FiberCel implanted into Mrs. Ashworth was defective in its manufacture in that the FiberCel units were contaminated with tuberculosis, which in turn transmitted the serious and deadly illness to patients, including Mrs. Ashworth.

206.    The FiberCel unit manufactured by Defendants and implanted into Mrs. Ashworth was unsafe, defective, and unreasonably dangerous before it left Defendants' possession, and was in the same condition when implanted into Mrs. Ashworth as when placed into the stream of commerce by Defendants.

207.    Defendants knew or should have known, based on the industry and scientific knowledge available at the time of their manufacture and distribution, that FiberCel contaminated with tuberculosis was defective, unsafe, and unreasonably dangerous to FiberCel users, including Mrs. Ashworth.

208.   Ordinary patients and consumers, including Mrs. Ashworth, who were implanted with FiberCel, could not and would not have recognized the potential defects, risks, and dangers of contaminated FiberCel units.

209.   FiberCel was implanted into Mrs. Ashworth in a manner that was reasonably foreseeable to Defendants.

210.   The contaminated FiberCel was expected to and did reach users and consumers, including Mrs. Ashworth, without substantial change in the condition that it was sold.

211.   The contaminated FiberCel was in a defective condition that created a risk of harm to individuals, including Mrs. Ashworth.

212.   There was no material change to the contaminated FiberCel prior to its implantation into Mrs. Ashworth.

213.   The defective condition of the contaminated FiberCel includes those deficiencies set forth in this Complaint, including but not limited to designing and manufacturing the FiberCel without proper policies, procedures, protocols, guidelines or rules to make FiberCel safe for its intended use and to comply with federal, state and local laws and Food & Drug Administration regulations.

214.   The failures in the FiberCel manufacturing process, as described in this Complaint, directly caused Mrs. Ashworth's injuries and death.

215.   Mrs. Ashworth's injuries and death were caused by the Defendants designing, manufacturing, screening, fabricating, assembling, inspecting, marketing, distributing, selling and supplying of FiberCel in a defective condition, for which the Defendants are strictly liable to and Mrs. Ashworth's survivors.

216.    Defendants are strictly liable because the contaminated FiberCel was defective and unreasonably dangerous.

217.    Defendants are strictly liable because the danger to users of the contaminated FiberCel was unknowable and unacceptable to consumers.

218.    Defendants are strictly liable because a reasonable person would conclude that the probability and seriousness of harm to persons using the contaminated FiberCel and the risk of serious injury or death like that suffered by Mrs. Ashworth significantly outweighed the burden or costs of taking precautions to avoid such harm.

219.    The injuries and losses to Mrs. Ashworth and her estate were caused by Defendants designing, manufacturing, fabricating, assembling, testing, screening, marking, distributing, selling or supplying FiberCel in a defective and unreasonably dangerous condition and without proper precautions, warnings, instructions or guidelines for its safe use for which the Defendants are strictly liable to Plaintiff.

220.    Mrs. Ashworth suffered the catastrophic and fatal injuries and other damages described in this Complaint as a result of Defendants' defective FiberCel product.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive damages, in an amount greater than $50,000.00 and the prevailing arbitration limits, exclusive or pre- and post-judgment interest and costs.

## COUNT TWO – NEGLIGENCE

**Plaintiff v. Defendants Aziyo Biologics, Incorporated, Medtronic Sofamor Danek USA, Inc., Spinalgraft Technologies LLC, DCI Donor Services, Inc., New Mexico Donor Services, Inc., and Eurofins Donor & Product Testing, Inc., f/k/a Eurofins VRL**

221.    Defendants owed a duty to Mrs. Ashworth to design, manufacture, fabricate, assemble, inspect, market, distribute, label, sell and supply FiberCel in a way that avoided harm to consumers and patients, including Mrs. Ashworth.

222.    Defendants owed a duty to warn Mrs. Ashworth of the hazards and dangers associated with the use of FiberCel to prevent harm to consumers and patients, including Mrs. Ashworth.

223.    Defendants owed a duty to provide proper precautions and instructions concerning the dangers associated with FiberCel and a duty to warn of the hazards and dangers associated with potential defects they knew or should have known were present or potentially present in their product, so as to avoid harm to consumers and patients, including Mrs. Ashworth.

224.    Defendants breached their duties to Mrs. Ashworth.

225.    The negligence and reckless Defendants, acting by and through their authorized divisions, subsidiaries, acquired and affiliated entities, agents, servants and employees, included one of more of the following:

    a.  designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling or supplying FiberCel in an unsafe condition for foreseeable and intended uses, including implantation into patients like Mrs. Ashworth;

    b.  designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling or supplying FiberCel in such a way that persons using FiberCel would not be apprised of its danger;

    c.  defectively designing FiberCel without appropriate policies, procedures, rules, protocols, regulations, testing or screening to prevent against contamination and transplantation of defective products;

    d.  defectively designing FiberCel without properly advising patients of the inherent and severe dangers of Defendants failure to adhere to appropriate policies,

procedures, rules, protocols, guidelines, testing, screening or regulations to prevent against contamination;

e.  failure to adequately and properly test the subject FiberCel;

f.  defectively designing FiberCel in a manner which allowed the product to become contaminated with tuberculosis or deadly infectious diseases;

g.  failure to adequately warn of an existing dangerous and hazardous condition, including the risk of death due to contamination from tuberculosis or other deadly infectious diseases;

h.  failure to instruct users, patients and consumers of FiberCel regarding safety and precautions in case of contamination in FiberCel implant recipients;

i.  failure to provide post sale warnings or instructions for FiberCel;

j.  failure to provide or properly label FiberCel with appropriate instructions given the deficiencies in designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling or supplying FiberCel;

k.  failure to instruct users, patients and consumers regarding the specific steps to be taken regarding safety and precautions in case of transplant contamination given the deficiencies in designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling or supplying FiberCel;

l.  failure to supply FiberCel products that were free of defects and fit and safe in all respects for their intended and foreseeable uses;

m.  failure to provide instructions or warnings with or on FiberCel that would sufficiently and appropriately inform users, patients and consumers of its safety risks;

n.  failure to provide instructions or warnings with FiberCel that were sufficient to adequately warn the user of the risks and dangers involved with the product;

o.  failure to provide proper instructions or warnings with FiberCel regarding the exact risks associated with transplantation;

p.  failure to employ, provide, or supply proper and appropriate warnings with FiberCel to apprise users, patients and consumers of the inherent dangers of FiberCel given Defendants failure to adhere to appropriate policies, procedures, rules, protocols, guidelines, testing, screening or regulations to prevent against contamination;

q.  failure to employ, provide, or supply proper and appropriate instructions for FiberCel given Defendants designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling or supplying FiberCel in an unsafe condition for foreseeable and intended uses;

r.  disregarding the safety and well-being of users, patients and consumers of FiberCel and the public, including Mrs. Ashworth, by designing and manufacturing the FiberCel in a defective manner;

s.  disregarding the safety of users, patients and consumers of FiberCel and the public, including Mrs. Ashworth, by failing to eliminate, rectify, and warn of known dangers or defects associated with FiberCel's use, involving a substantial likelihood of injury;

t.  failing to comply with statutes, laws, codes, regulations, and industry standards regarding the proper and safe design applicable to FiberCel and similar tissue products;

u.  failing to comply with statutes, laws, codes, regulations, and industry standards regarding the proper and safe warnings and instructions applicable to FiberCel and similar tissue products;

v.  failure to meet governmental and industry safety standards, including but not limited to the Food & Drug Administration, the American Association of Tissue Banks, Association for the Advancement of Blood & Biotherapies, federal, state and local laws and regulations;

w.  failure to use reasonable care to sell, manufacture, design, distribute, or supply FiberCel that complied with industry safety standards;

x.  negligently putting into the stream of commerce FiberCel that failed to contain proper and appropriate warnings and instructions, and to make it safe for its foreseeable and intended uses;

y.  negligently designing FiberCel that was particularly susceptible to contamination with tuberculosis and other deadly infectious and communicable diseases; and

z.  negligently designing FiberCel that was unsafe for its intended use.

## COUNT THREE – STRICT PRODUCTS LIABILITY
### Manufacturing Defect
**Plaintiff v. Aziyo Biologics, Inc., Medtronic Sofamor Danek, USA, Inc., and Spinalgraft Technologies, LLC)**

226.  Defendants designed, manufactured, tested, marketed, sold, and distributed FiberCel into the stream of commerce.

227.  In June 2021, Defendants recalled FiberCel from Donor Lot Number NMDS210011, which was contaminated with tuberculosis.

228.  Defendants' quality control should have, but failed to, discover that the FiberCel Donor lot was contaminated.

229.  FiberCel was defective in its manufacture in that the FiberCel units were contaminated with tuberculosis, which in turn transplanted the serious and potentially deadly illness to patients, including Mrs. Ashworth, who was implanted with the contaminated FiberCel.

230.  The FiberCel unit manufactured by Defendants and implanted into Plaintiff was unsafe, defective and unreasonably dangerous before it left Defendants' possession, and was in the

same condition when implanted into Mrs. Ashworth as when placed into the stream of commerce by Defendants.

231.    Defendants knew or should have known, based on the industry and scientific knowledge available at the time of their manufacture and distribution, that FiberCel contaminated with tuberculosis was defective, unsafe and unreasonably dangerous to FiberCel users, including Mrs. Ashworth.

232.    Ordinary consumers, including Mrs. Ashworth, who were implanted with FiberCel, could not and would not have recognized the potential defects, risks and dangers of contaminated FiberCel units.

233.    FiberCel was implanted into Plaintiff in a manner which was reasonably foreseeable to the Defendants.

234.    As a result of Mrs. Ashworth's use of the defective FiberCel units as manufactured, designed, sold, supplied, and distributed into the stream of commerce by Defendants, Mrs. Ashworth contracted tuberculosis, which caused her to suffer harm, damages, economic loss and death and Plaintiff will continue to suffer the sequalae of such harm into the foreseeable future.

## COUNT FOUR – STRICT PRODUCTS LIABILITY
### Manufacturing Defect
### Plaintiff v. DCI Donor Services, Inc., and New Mexico Donor Services

235.    Defendants harvested and processed human cadavers and sold and distributed human tissue into the stream of commerce for use in the FiberCel implanted into Mrs. Ashworth.

236.    Defendants' quality control should have, but failed to, discover that the cadaver and human tissue sold for use in the FiberCel lot was contaminated with tuberculosis.

237.    The contaminated FiberCel was defective in its manufacture in that the FiberCel units were contaminated with tuberculosis, by Defendants contaminated human tissue, which in

turn transmitted the serious and potentially deadly illness to patients, including Mrs. Ashworth, who was implanted with the contaminated FiberCel.

238.    The FiberCel unit manufactured by Aziyo and Medtronic, containing contaminated human tissue that was harvested and sold by Defendants, and implanted into Mrs. Ashworth, was unsafe, defective, and unreasonably dangerous before it left Defendants' possession, and was in the same condition when implanted into Mrs. Ashworth as when placed into the stream of commerce by Defendants.

239.    Defendants knew or should have known, based on the industry and scientific knowledge available at the time of FiberCel's manufacture and distribution, that selling human tissue contaminated with tuberculosis for use in FiberCel was defective, unsafe, and unreasonably dangerous to FiberCel users, including Mrs. Ashworth.

240.    Ordinary consumers, including Mrs. Ashworth, who was implanted with FiberCel, could not and would not have recognized the potential defects, risks, and dangers of contaminated FiberCel units.

241.    FiberCel containing human tissue sold by Defendants was implanted into Plaintiff in a manner which was reasonably foreseeable to Defendants.

242.    As    a    result    of    Mrs.    Ashworth's    use    of    the    defective FiberCel unit, containing human tissue that was harvested, processed, and sold by Defendants, as manufactured, designed, sold, supplied, and distributed into the stream of commerce by the Defendants, Plaintiff contracted tuberculosis, which caused Mrs. Ashworth to suffer harm, damages, economic loss and death and Plaintiff will continue to suffer the sequalae of these harms into the foreseeable future.

## COUNT FIVE – STRICT PRODUCTS LIABILITY
### Design Defect
**Plaintiff v. Aziyo Biologics, Inc., Medtronic Sofamor Danek USA, Inc., and Spinalgraft Technologies, LLC**

243.   Defendants were engaged in the business of designing, manufacturing, testing, marketing, distributing and selling FiberCel for the sale to, and use by, members of the public.

244.   Defendants manufactured, distributed and sold the FiberCel product which was implanted into Mrs. Ashworth's body during her spinal surgery.

245.   The FiberCel manufactured by Defendants reached Mrs. Ashworth without substantial change in its condition when it was implanted into her spine during her operation.

246.   The FiberCel was defective and unreasonably dangerous when it entered the stream of commerce and when used by Mrs. Ashworth.

247.   Defendants owe a duty to the public and to Mrs. Ashworth to exercise reasonable care in the design, study, development, manufacture, promotion, sale, marketing and distribution of FiberCel. Defendants failed to exercise reasonable care in the design of FiberCel because, as designed, FiberCel could and did cause serious personal injuries such as those suffered by Mrs. Ashworth, and her death, during the foreseeable use of FiberCel.

248.   The FiberCel implanted into Mrs. Ashworth was defective and, because of its defects, was unreasonably dangerous to persons who might reasonably be expected to require its use. In addition, this product was dangerous to an extent beyond that which could reasonably be contemplated by Mrs. Ashworth.

249.   The FiberCel implanted into Mrs. Ashworth was defective at the time it was distributed by the Defendants or left their control.

250. Mrs. Ashworth was a person who would reasonably be expected to use FiberCel.

251. Defendants' failure to exercise reasonable care in the design, marketing, selling, distributing and manufacturing of FiberCel was a proximate cause of Mrs. Ashworth's injuries, death and damages.

252. As a result of the actions and inactions of the Defendants as set forth above, Mrs. Ashworth was exposed to FiberCel, and suffered the injuries, death and damages described in this Complaint and her medical records.

## COUNT SIX – STRICT PRODUCTS LIABILITY
### Failure to Warn
**Plaintiff v. Aziyo Biologics, Inc., Medtronic Sofamor Danek, USA, Inc., and Spinalgraft Technologies, LLC**

253. Defendants owed a duty of reasonable care to adequately warn of the risks associated with the use of FiberCel to foreseeable users, including Mrs. Ashworth.

254. Defendants knew or reasonably should have known that the warnings provided to users of FiberCel regarding the risks associated with its use were incorrect or inadequate in at least the following material respects:

a. FiberCel was unaccompanied by proper warnings regarding all possible risks associated with its use and the comparative severity, incidence, and duration of adverse effects; and

b. Defendants failed to include adequate warnings that would alert Mrs. Ashworth and her physicians to the dangerous risks of FiberCel, including, among other things, development of tuberculosis;

c. Defendants failed to immediately warn patients and physicians after they learned that their product was contaminated with tuberculosis; and

d. Defendants otherwise failed to provide adequate warnings.

255.    By failing to warn Mrs. Ashworth and her physicians of the adverse health risks associated with FiberCel, Defendants breached their duty to Mrs. Ashworth of reasonable care and safety.

256.    Defendants, as manufacturers and distributors of human tissue products, are held to the level of knowledge of an expert in the field. Further, Defendants knew, or should have known, that the warnings they distributed regarding the risks of a contaminated product causing tuberculosis and associated injuries, complications or death following the implantation of FiberCel were inadequate.

257.    Mrs. Ashworth did not have the same expert knowledge as Defendants, and no adequate warning of other clinically relevant information and data was communicated to Mrs. Ashworth or her physicians.

258.    Defendants have a continued duty to provide consumers, including Mrs. Ashworth and her physicians, with warnings and other clinically relevant information and data regarding the risks and dangers associated with FiberCel, as it came or could have become available to Defendants.

259.    Defendants marketed, promoted, distributed and sold an unreasonably dangerous and defective human tissue product, FiberCel, to health care providers empowered to implant FiberCel into consumers, including Mrs. Ashworth, without adequate warnings and other clinically relevant information and data. Through both omission and affirmative misstatements, Defendants mislead the medical community about the risk and benefit balance of FiberCel, which resulted in severe injury and the death to Mrs. Ashworth.

260.    Defendants knew or should have known that consumers, including Mrs. Ashworth, would foreseeably and needlessly suffer injury because of Defendants' failures.

Case ID: 230402798

261. Defendants had an obligation to provide Mrs. Ashworth and her physicians with adequate clinically relevant information, data and warnings regarding the adverse health risks associated with the implantation of FiberCel.

262. By failing to provide Mrs. Ashworth and her physicians with adequate clinically relevant information, data and warnings regarding the adverse health risks associated with the implantation of FiberCel, Defendants breached their duty of reasonable care and safety.

263. Defendants' actions described above were performed willfully, and with reckless disregard for the life and safety of the Plaintiff and the public.

264. Defendants' failure to provide adequate warnings was a proximate cause of Plaintiff's injuries, death and damages.

265. As a result of the actions and inactions of the Defendants as described in this Complaint, Plaintiff was exposed to contaminated FiberCel and suffered the injuries, death and damages described in this Complaint and her medical records.

## COUNT SEVEN – STRICT PRODUCTS LIABILITY

### Failure To Warn
### Plaintiff v. DCI Donor Services, Inc., and New Mexico Donor Services, Inc.

266. Defendants owed a duty of reasonable care to adequately warn of the risks associated with the use of their human tissue that was used in the subject FiberCel lot to foreseeable users, including Mrs. Ashworth.

267. While harvesting, processing and selling their human tissue product, Defendants knew of conditions to test for, yet they failed to adequately test for those conditions, failed to warn the other Defendants that limited testing was done and failed to warn hospitals and end-users like

Mrs. Ashworth that the human tissue used in FiberCel was contaminated with tuberculosis and could cause substantial harm and death.

268.    Defendants knew or should have known that the warnings provided to users of FiberCel, which contained Defendants' contaminated human tissue, regarding the risks associated with its use were incorrect or inadequate in at least the following material respects:

    a. FiberCel, including its human tissue component, was unaccompanied by proper warnings regarding all possible risks associated with its use and the comparative severity, incidence, and duration of adverse effects; and

    b. Defendants failed to provide adequate warnings that would alert Mrs. Ashworth and her physicians to the dangerous risks of FiberCel and Defendants human tissue, including, among other things, development of tuberculosis;

    c. Defendants failed to immediately warn patients and physicians after they learned that their human tissue product was contaminated with tuberculosis; and

    d. Defendants otherwise failed to provide adequate warnings.

269.    By failing to warn Mrs. Ashworth and her physicians of the adverse health risks associated with FiberCel and the contaminated human tissue used to make FiberCel, Defendants breached their duty to Mrs. Ashworth of reasonable care and safety.

270.    Defendants, as harvesters, processors, and sellers of human tissue products, are held to the level of knowledge of an expert in the field. Further, Defendants knew, or should have known, that the warnings they provided regarding the risks of a contaminated human tissue product causing tuberculosis and associated injuries, complications or death following the implantation of FiberCel were inadequate.

271.    Mrs. Ashworth did not have the same expert knowledge as Defendants, and no adequate warning of other clinically relevant information and data was communicated to Mrs. Ashworth or her physicians.

272.    Defendants have a continuing duty to provide consumers, including Mrs. Ashworth and her physicians, with warnings and other clinically relevant information and data regarding the

risks and dangers associated with its human tissue product, as it came or could have become available to Defendants.

273.  Defendants harvested, processed and sold unreasonably dangerous and defective human tissue for use in FiberCel, without adequate warnings and other clinically relevant information and data. Through both omission and affirmative misstatements, Defendants mislead the medical community about the risk and benefit balance of their human tissue to be used in FiberCel.

274.  Defendants knew or should have known that consumers, including Mrs. Ashworth, would foreseeably and needlessly suffer injury and death because of Defendants' failures.

275.  Defendants had an obligation to provide Mrs. Ashworth and her physicians with adequate clinically relevant information, data and warnings regarding the adverse health risks associated with the implantation of human tissue contaminated with tuberculosis.

276.  By failing to provide Mrs. Ashworth and her physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with the implantation of human tissue contaminated with tuberculosis, Defendants breached their duty of reasonable care and safety.

277.  Defendants' actions described above were performed willfully, and with reckless disregard for the life and safety of the Plaintiff and the public.

278.  Defendants' failure to provide adequate warnings was a proximate cause of Mrs. Ashworth's injuries, death and damages.

279.  As a result of the actions and inactions of the Defendants as described in this Complaint, Mrs. Ashworth was exposed to contaminated human tissue through the implantation

of the FiberCel product and suffered the injuries, death and damages described in this Complaint and her medical records.

## COUNT EIGHT – NEGLIGENCE
**Plaintiff v. Aziyo Biologics, Inc., Medtronic Sofamor Danek USA, Inc., and Spinalgraft Technologies LLC**

280.    Defendants owed a duty to Mrs. Ashworth to exercise reasonable care in designing, researching, manufacturing, marketing, supplying, promoting, selling, testing, quality assurance, quality control, and distribution of FiberCel into the stream of commerce, including a duty to assure that the FiberCel would not cause those who used it, including Mrs. Ashworth, to suffer adverse harmful effects.

281.    Defendants failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control and distribution of FiberCel.

282.    Defendants knew or should have known that those individuals who used the defective FiberCel were at risk for suffering harmful effects from it, including but not limited to, tuberculosis, as well as other severe injuries which are permanent and lasting in nature, physical pain, mental anguish, diminished enjoyment of life and death.

283.    Defendants were negligent in designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of FiberCel.

284.    The negligence of Defendants, their agents, servants and employees, included, but was not limited to, the following acts and omissions:

    a.  designing manufacturing, producing, creating and promoting FiberCel without adequately, sufficiently or thoroughly testing the FiberCel units to ensure they were free from contamination of communicable diseases, including but not limited to, tuberculosis;

b.  failing to conduct a sufficient quality control testing program to determine whether the subject FiberCel was manufactured properly and was free from contamination or other defects making it unsafe for users of the product;

c.  failing to adequately and properly obtain and review complete donor medical history;

d.  negligently failing to timely recall their dangerous and defective FiberCel lots at the earliest date that it became known that certain lots of FiberCel were, in fact, dangerous and defective;

e.  negligently manufacturing FiberCel in a manner that was dangerous to those individuals who had FiberCel implanted into their bodies;

f.  negligently producing FiberCel in a manner that was dangerous to those individuals who had it transplanted into their bodies;

g.  negligently and carelessly harvesting an unqualified and inadequately screened human donor;

h.  negligently failing to test the human donor tissue and bone;

i.  failing to warn individuals who were using the product of the risks of contracting tuberculosis; and

j.  other carelessness, recklessness and negligence.

285.  Defendants knew or should have known that consumers, such as Mrs. Ashworth, would suffer foreseeable injury and would be at an increased risk of suffering an injury because of Defendants' failure to exercise ordinary care, as described in this Complaint.

286.  Defendants' negligence was the proximate cause of Mrs. Ashworth's physical, mental, emotional injuries and harm, economic losses and death.

287.  Defendants are liable to Plaintiff for all Mrs. Ashworth's injuries, harm, damages, death and economic and non-economic losses in an amount to be determined at trial.

## COUNT NINE – NEGLIGENCE
### Plaintiff v. DCI Donor Services, Inc., and New Mexico Donor Services

288.  Defendants owed a duty to Mrs. Ashworth to exercise reasonable care in harvesting, processing, supplying, promoting, selling, testing, quality assurance, quality control and distribution of human tissue into the stream of commerce, including a duty to assure that their human tissue, which was used in the FiberCel lot, would not cause those who used it, including Mrs. Ashworth, to suffer adverse harmful effects.

Case ID: 230402798

289.    Defendants failed to exercise reasonable care in the harvesting, processing, supplying, testing, quality assurance, quality control, sale and distribution of their human tissue product for use in FiberCel.

290.    Defendants knew or should have known that those individuals who were exposed to their contaminated human tissue used in FiberCel were at risk for suffering harmful effects from it, including but not limited to, tuberculosis, as well as other severe injuries which are permanent and lasting in nature, physical pain, mental anguish, diminished enjoyment of life and death.

291.    Defendants were negligent in the harvesting, processing, supplying, testing, quality assurance, quality control, sale and distribution of their human tissue product for use in FiberCel.

292.    The negligence of Defendants, their agents, servants and employees, included, but was not limited to, the following acts and omissions:

a.  harvesting, processing and selling human tissue for use in FiberCel without adequately, sufficiently, or thoroughly testing the human tissue to ensure that it was free from contamination of communicable diseases, including but not limited to, tuberculosis;

b.  failing to conduct a sufficient quality control testing program to determine whether the subject human tissue used in the defective FiberCel lot was properly harvested and free from contamination or other defects making it unsafe for users of the product;

c.  failing to adequately and properly obtain and review complete donor medical history;

d.  negligently failing to timely recall their dangerous and contaminated human tissue at the earliest date that it became known that its human tissue sold for use in FiberCel was in fact, dangerous and defective;

e.  negligently harvesting, processing and selling human tissue for use in FiberCel in a manner that was dangerous to those individuals who had FiberCel implanted into their bodies;

f.  negligently and carelessly harvesting an unqualified and inadequately screened human donor;

g.  negligently failing to test the human donor tissue and bone;

h.  failing to warn individuals who were using their human tissue of the risks of contracting tuberculosis; and

i.  other carelessness, recklessness and negligence.

Case ID: 230402798

293.    Defendants knew or should have known that consumers, such as Mrs. Ashworth, would suffer foreseeable injury and be at increased risk of suffering an injury because of Defendants' failure to exercise ordinary care, as described in this Complaint.

294.    Defendants' negligence was the proximate cause of Mrs. Ashworth's physical, mental, emotional injuries and harm, economic loss and death.

295.    Defendants are liable to Plaintiff for all Mrs. Ashworth's injuries, harm, damages, death and economic and non-economic losses in an amount to be determined at trial.

## COUNT TEN – NEGLIGENCE
### Plaintiff v. Eurofins Donor & Product Testing, Inc., f/k/a Eurofins VRL

296.    Defendant owed a duty to Mrs. Ashworth to exercise reasonable care in developing the testing for and testing the human tissue used in FiberCel and in testing the finished FiberCel product, including a duty to assure that the FiberCel and human tissue used in FiberCel would be free from communicable diseases and viruses and not cause those who used it, including Mrs. Ashworth, to suffer adverse harmful effects.

297.    Defendants failed to exercise reasonable care in developing testing and testing FiberCel and the human tissue used in FiberCel and as a result, Defendants did not test for tuberculosis or inadequately tested FiberCel and the human tissue used in FiberCel for tuberculosis. Had Defendant adequately advised and consulted on testing, tested FiberCel and the human tissue used in FiberCel, it would have discovered that the products were contaminated.

298.    Defendant knew or should have known that those individuals who use the defective FiberCel were at risk for suffering harmful effects from it, including but not limited to, tuberculosis, as well as other severe injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life and death.

299.  Defendant was negligent in developing and consulting on testing, testing FiberCel and the human tissue used in FiberCel.

300.  The negligence of Defendant, its agents, servants, subsidiaries and employees included, but was not limited to, the following acts and/or omissions:

   a.  failing to adequately, sufficiently or thoroughly test the subject FiberCel units to ensure they were free from contamination of communicable diseases, including but not limited to, tuberculosis;

   b.  failing to properly consult or advise Defendants concerning the adequacy, sufficiency and thoroughness of the testing of FiberCel to ensure that they were free from contamination of communicable diseases, including but not limited to tuberculosis;

   c.  failing to conduct a sufficient quality control testing program to determine whether the subject FiberCel was manufactured properly and was free from contamination or other defects making it unsafe for users of the product;

   d.  failing to adequately and properly obtain and review complete donor medical history;

   e.  failing to test the human donor tissue to ensure it was free from communicable diseases, including but not limited to, tuberculosis and other infections and communicable disease;

   f.  failing to advise or recommend that FiberCel be tested for the presence of tuberculosis.

   g.  failing to create a sufficient testing regimen that would have discovered the presence of tuberculosis in the subject FiberCel lot and human tissue used in the subject FiberCel lot.

   h.  other carelessness, recklessness and negligence.

301.  Defendant knew or should have known that consumers, such as Mrs. Ashworth, would suffer foreseeable injury and be at increased risk of suffering an injury and death because of Defendants' failure to exercise ordinary care in the testing of the subject FiberCel lot and human tissue used in the subject FiberCel lot, as described in this Complaint.

302.  Defendant's negligence was the proximate cause of Mrs. Ashworth's physical, mental, emotional injuries and harm, economic loss and death.

303.    Defendant is liable to Mrs. Ashworth for all her injuries, harm, damages, economic and non-economic losses and death in an amount to be determined at trial.

## COUNT ELEVEN – BREACH OF IMPLIED WARRANTY
### Plaintiff v. Aziyo Biologics, Inc., Medtronic Sofamor Danek, USA, Inc., and Spinalgraft Technologies, LLC

304.    Defendants are in the business of designing, manufacturing, testing, supplying, selling and placing into the stream of commerce certain goods, including FiberCel.

305.    By placing FiberCel into the stream of commerce, Defendants impliedly warranted that it was merchantable and fit and safe for its intended use.

306.    The FiberCel placed into the stream of commerce by Defendants and implanted into Plaintiff was contaminated, leading those persons who receive FiberCel implants to develop tuberculosis, including Mrs. Ashworth, and accordingly, was not fit, safe, or merchantable for its intended use.

307.    The contamination in the FiberCel, manufactured, supplied and placed into the stream of commerce by Defendants, was present at the time the FiberCel units left Defendants' control and at the time it was implanted into Mrs. Ashworth as part of her operation.

308.    Defendants breached the implied warranty for FiberCel because it was contaminated, unmerchantable, and not fit for its intended purpose, resulting in personal injuries to Mrs. Ashworth including her development of tuberculosis and her death.

309.    Mrs. Ashworth was a foreseeable user of the FiberCel designed, manufactured and placed into the stream of commerce by Defendants.

310.    Defendants are liable to Mrs. Ashworth for her injuries, harm, damages, economic and non-economic losses and death in an amount to be determined at trial.

## COUNT TWELVE – BREACH OF EXPRESS WARRANTY
### Plaintiff v. Aziyo Biologics, Inc., Medtronic Sofamor Danek, USA, Inc., and Spinalgraft Technologies, LLC

311.   Defendants expressly represented and warranted to Mrs. Ashworth and her physicians, by and through statements made by Defendants and their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the public, that FiberCel and its human tissue component were safe, effective, fit and proper for their intended use. Mrs. Ashworth and her physicians utilized FiberCel relying upon these warranties.

312.   Defendants' own promotion states that FiberCel is processed in sterile conditions and is screened for bacteria and communicable diseases.

313.   In utilizing FiberCel, Mrs. Ashworth relied on the skill, judgment, representation and express warranties of the Defendants. These warranties and representations were false in that FiberCel is unsafe and unfit for its intended uses.

314.   As a result of the breach of express warranties by Defendants, Mrs. Ashworth suffered injuries, damages and death as described in this Complaint.

## COUNT THIRTEEN – BREACH OF EXPRESS WARRANTY
### Plaintiff v. DCI Donor Services, Inc., and New Mexico Donor Services

315.   Defendants expressly represented and warranted to Mrs. Ashworth and her physicians, by and through statements made by Defendants and their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the public, that their human tissue product sold for use in FiberCel is safe, effective, fit and proper for its intended use. Mrs. Ashworth and her physicians utilized FiberCel and the human tissue used in FiberCel relying upon these warranties.

Case ID: 230402798

316. In utilizing FiberCel and the human tissue used in FiberCel, Mrs. Ashworth relied on the skill, judgment, representation and foregoing express warranties of the Defendants. These warranties and representations were false in that FiberCel and its human tissue component are unsafe and unfit for its intended uses.

317. As a result of the breach of express warranties by Defendants, Mrs. Ashworth suffered injuries, damages and death as described in this Complaint.

## COUNT FOURTEEN – NEGLIGENCE

**Plaintiff v. Reading Hospital, Tower Health, Tower Health Medical Group, Main Line Hospitals, Inc., d/b/a Paoli Hospital, Main Line Healthcare, Main Line Health System, David Lamborn, D.O., Daniel Wimer, PA-C, Ankit Shah, M.D., Adam Sigal, M.D., Chad Roarabaugh, PA-C, Mitchell Drake, M.D., Jessica Rae Viola, PA-C, and Joseph C. Li, M.D.**

318. The negligent acts and omissions of Reading Hospital, Tower Health, Tower Health Medical Group, Main Line Hospitals, Inc., d/b/a Paoli Hospital, Main Line Healthcare, Main Line Health System, David Lamborn, D.O., Daniel Wimer, PA-C, Ankit Shah, M.D., Chad Roarabaugh, PA-C, Mitchell Drake, M.D., Jessica Rae Viola, PA-C, and Joseph C. Li, M.D., individually and through their actual, apparent and ostensible agents, servants and employees who participated in the care of Mrs. Ashworth in 2021, as described in this Complaint, consisted of one or more of the following:

   a. failing to conform to the accepted standards of care in the timely and proper evaluation, diagnosis, treatment and management of Mrs. Ashworth in April 2021, as described in this Complaint;
   b. failing to properly evaluate, diagnose and manage Mrs. Ashworth's condition in the emergency departments during April 2021, as described in this Complaint;
   c. failing to properly monitor vital signs, lab work values and new onset symptoms;
   d. negligently disregarding vital signs, lab work values and new onset symptoms;
   e. failing to properly interpret vital signs, lab work values and new onset symptoms;
   f. failing to timely recognize and respond to signs and symptoms of infectious, neurological, vascular and cardiovascular emergencies;
   g. failing to timely recognize and respond to signs and symptoms of infectious, neurological, vascular and cardiovascular emergencies;

Case ID: 230402798

h. negligently disregarding the signs and symptoms of infectious, neurological, vascular and cardiovascular emergencies;

i. failure to timely recognize and respond to the emergence of non-reassuring symptoms, signs and features of infectious, neurological, vascular and cardiovascular emergencies;

j. negligently disregarding non-reassuring and ominous symptoms, signs and features of infectious, neurological, vascular and cardiovascular emergencies;

k. negligently disregarding or failing to timely recognize and appropriately respond to and investigate hemodynamic instability;

l. negligently disregarding or failing to timely recognize and appropriately respond to and investigate hypothermia;

m. negligently disregarding or failing to timely recognize and appropriately respond to and investigate abnormal vital signs and lab values;

n. negligently disregarding or failing to timely recognize and appropriately respond to and investigate abnormalities suggesting infectious, neurological, vascular and cardiovascular emergencies;

o. negligently disregarding or failing to timely recognize and appropriately respond to and investigate abnormalities suggesting infectious, neurological, vascular and cardiovascular emergencies;

p. negligently administering medications;

q. negligently administering pain medications and interventions;

r. negligently disregarding or failing to timely recognize and appropriately respond to and investigate Mrs. Ashworth's risk of infectious, cardiovascular, vascular and neurological emergency;

s. failing to follow the hospital's and health system's infectious disease, neurological, cardiac, emergency and vascular department policies;

t. failing to timely assess and re-assess neurological well-being;

u. failing to conduct a focused neurological exam in a patient with recurrent, unabated intractable headache;

v. failing to timely and properly evaluate new symptoms during repeat emergency department visits;

w. failing to timely, accurately and properly document data in the medical record, resulting in an incomplete and unreliable medical record, causing future providers to negligently speculate;

x. failing to adhere to the hospital's charting policies;

y. failing to fully review the medical record;

z. negligently discharging Mrs. Ashworth without fully reviewing her medical record;

aa. negligently discharging Mrs. Ashworth with hemodynamic instability;

bb. negligently discharging Mrs. Ashworth with hypothermia;

cc. negligently discharging Mrs. Ashworth with abnormal lab values and electrocardiogram;

dd. negligently discharging Mrs. Ashworth despite her risk of infectious, cardiovascular, vascular and neurological emergency

ee. negligently failing to timely, accurately and properly evaluate and re-assess shifts in Mrs. Ashworth's lab values;

Case ID: 230402798

ff. failing to formulate and execute a timely and appropriate plan to treat the cause of Mrs. Ashworth's headache symptoms and risk of infectious, cardiovascular, vascular and neurological emergency;

gg. failing to reassess and modify the plan for Mrs. Ashworth in the setting of signs and symptoms of risk of infectious, cardiovascular, vascular and neurological emergency;

hh. failing to timely respond to signs and symptoms of risk of infectious, cardiovascular vascular and neurological emergency;

ii. failing to be properly suspicious of or investigate for risk of infectious, cardiovascular, vascular and neurological emergency;

jj. negligently disregarding a risk of infectious, cardiovascular, vascular and neurological emergency in a lumbar surgery patient;

kk. negligently managing a post-lumbar surgery patient with complaints of intractable headache and risk of infectious, vascular and neurological emergency;

ll. negligently disregarding new onset symptoms in a post-lumbar surgery patient with signs suggesting a risk of infectious, cardiovascular, vascular and neurological emergency;

mm. failing to properly assess Mrs. Ashworth for her risk of impending infectious, vascular and neurological emergency and injury;

nn. negligently failing to collect, evaluate, test and analyze Mrs. Ashworth's cerebral spinal fluid and blood;

oo. negligently failing to appropriately consider Mrs. Ashworth's prior surgical history and complications;

pp. negligently failing to use imaging to appropriately evaluate Mrs. Ashworth's risk of vascular, cardiovascular, infectious and neurological emergency and injury;

qq. negligently failing to use appropriate imaging to appropriately evaluate Mrs. Ashworth's risk of cardiovascular, vascular, neurovascular, infectious and neurological emergency and injury;

rr. failing to admit Mrs. Ashworth;

ss. negligently failing to fully consider, evaluate, rule-out, work, up, diagnose and treat meningitis;

tt. negligently failing to order tests, imaging, labs, bloodwork and cultures to evaluate and treat meningitis;

uu. failing to administer antibiotics to Mrs. Ashworth;

vv. failing to promptly implement appropriate interventions to prevent cardiovascular, vascular, infectious, neurovascular and neurological emergency and injury;

ww. failing to promptly notify attending physicians of emergent circumstances or non-reassuring findings and data;

xx. failing to consult with attending physicians and consult with specialists in neurology, infectious disease, emergency medicine and vascular medicine when faced with a patient showing signs and symptoms of elevated risk of vascular, neurovascular, cardiovascular, infectious and neurological emergency and injury;

yy. failing to follow the appropriate hospital's and health system's policies;

zz. failing to follow the appropriate hospital's and health system's policies regarding patients showing signs and symptoms of elevated risk of vascular, neurovascular, cardiovascular, infectious and neurological emergency and injury;

aaa.    failing to properly supervise, oversee and instruct the physician assistant staff responsible for the monitoring, evaluation and management of Mrs. Ashworth's emergency;

bbb.    negligently deferring monitoring, evaluation and management of Mrs. Ashworth's emergency to physician assistant staff;

ccc.    failing to properly supervise, oversee and instruct the physician-assistant staff responsible for the monitoring, evaluation and management of Mrs. Ashworth's emergency;

ddd.    negligently deferring monitoring, evaluation and management of Mrs. Ashworth's emergency to physician-assistant staff;

eee.    negligently placing needles in areas of potential infection;

fff. failing to be familiar with and to adhere to hospital policies and procedures relating to Mrs. Ashworth's emergent medical needs; and

ggg.    failing to enforce hospital policies and procedures relating to Mrs. Ashworth's emergent medical needs;

hhh.    negligently failing to develop and implement a proper differential diagnosis for Mrs. Ashworth's signs and symptoms of a vascular, cardiovascular, neurovascular, infectious and neurological emergency and injury;

iii. negligently failing to rule out and treat deadly medical emergencies on Mrs. Ashworth's differential diagnosis;

jjj. negligently failing to assess the etiology of Mrs. Ashworth's headache, symptoms, bloodwork and vital sign abnormalities;

kkk.    negligently failing to develop a plan to address the etiology of Mrs. Ashworth's headache, symptoms, bloodwork, diagnostic and vital sign abnormalities;

lll. negligently attributing Mrs. Ashworth's headache to benign causes despite her signs and symptoms of elevated risk of a vascular, cardiovascular, neurovascular, infectious and neurological emergency and injury;

319.    The direct and vicarious negligence of Defendants, acting individually and through their agents, servants and employees, increased the risk of harm to Mrs. Ashworth and was a substantial factor in causing her catastrophic injuries and losses.

320.    At all relevant times, the Defendants identified in Count Fourteen of this Complaint engaged all the individuals named in this Complaint, including other defendants, agents, servants, employees, and other physicians, fellows, residents, nurses and other healthcare personnel who participated in the management and care of Mrs. Ashworth., as their actual, apparent, or ostensible

agents, servants, or employees to provide medical care and treatment to Mrs. Ashworth while acting within the course and scope of their agency or employment.

321.    The Count Fourteen Defendants are derivatively liable for the negligent acts and omissions of those individuals and their agents, servants or employees described in this Complaint under principles of *respondeat superior*, master-servant, vicarious liability, agency or right of control.

322.    The negligence of the Count Fourteen Defendants, by and through their agents, servants and employees, increased the risk of harm to Mrs. Ashworth. and caused them to suffer catastrophic and disabling injuries.

WHEREFORE, Plaintiff demands judgment in their favor and against Defendants, individually, jointly and severally, and an award of compensatory damages in an amount greater than $50,000.00 exclusive of pre-judgement interest, post-judgement interest and costs.

## COUNT FIFTEEN – CORPORATE NEGLIGENCE
**Plaintiff v. Reading Hospital, Tower Health, Tower Health Medical Group, Main Line Hospitals, Inc., d/b/a Paoli Hospital, Main Line Healthcare and Main Line Health System**

323.    In addition to its derivate and vicarious liability for the negligent acts and omissions of its agents, servants and employees, the Count Fifteen Defendants further owed direct and non-delegable duties to Mrs. Ashworth under the tenets set forth in Thompson v. Nason, 527 Pa. 330, 591 A.2d 703 (1991), and its progeny of case law, including Welsh v. Bulger, 698 A.2d 581 (Pa. 1997) and Whittington v. Woods, 768 A.2d 1144 (Pa. Super. 2001).

324.    The Count Fifteen Defendants' duties included: (1) the duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) the duty to select and retain only competent physicians; (3) the duty to oversee all persons who practice medicine within their

walls as to patient care; and (4) the duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients.

325.    The Count Fifteen Defendants had a duty to Mrs. Ashworth to exercise reasonable care in the appointment and reappointment of her physicians and nurses.

326.    The Count Fifteen Defendants had a duty to Mrs. Ashworth to provide her with reasonable and competent medical care and services and to avoid conduct that would increase the risk of harm to her.

327.    It is believed and therefore averred that one or more of the physicians or nurses involved in Mrs. Ashworth's care did not possess the requisite experience and training to render proper care and services to her.

328.    It is believed and therefore averred that the Count Fifteen Defendants were negligent in failing to properly determine the qualifications and proficiencies of its agents, servants and employees who were involved in the medical care, treatment and clinical decision-making for Mrs. Ashworth.

329.    The Count Fifteen Defendants knew or should have known that one or more of these individuals was not qualified to provide competent medical care and treatment to Mrs. Ashworth.

330.    At all relevant times, the Count Fifteen Defendants had actual or constructive knowledge of the care and treatment provided, or negligently not provided, to Mrs. Ashworth.

331.    The corporate negligence of the Count Fifteen Defendants, arising out of the medical and nursing care and treatment provided to Mrs. Ashworth, consisted of one or more of the following:

    a.  failing to have physicians, physician assistants and other healthcare providers

appropriate in number, training and experience to make appropriate and timely decisions regarding the emergency medicine and neurology care, management, evaluation, diagnosis and treatment of Mrs. Ashworth's signs and symptoms of an elevated risk of vascular, neurovascular, infectious and neurological emergency and injury, as described in this Complaint;

b. failing to have physicians, physician assistants and other healthcare providers appropriate in number, training and experience to attend to Mrs. Ashworth, and to make appropriate and timely decisions regarding the emergency medicine and neurology care, management, evaluation, diagnosis and treatment of Mrs. Ashworth's signs and symptoms of an elevated risk of vascular, neurovascular, infectious and neurological emergency and injury, as described in this Complaint, in the setting of new onset symptoms, vital sign and lab abnormalities;

c. failing to select and retain physicians, physician assistants and other healthcare providers competent in assessing and managing the emergency medicine and neurology care, management, evaluation, diagnosis and treatment of Mrs. Ashworth's signs and symptoms of an elevated risk of vascular, neurovascular, infectious and neurological emergency and injury, as described in this Complaint;

d. failing to ensure that Mrs. Ashworth received appropriate attention from fully and properly trained and experienced physicians, physician assistants, nurses and other healthcare providers;

e. failing to formulate, adopt or enforce appropriate policies, procedures and protocols with respect to:

    i. evaluation of post-surgical patients with risks of vascular, neurovascular, infectious and neurological emergency and injury;

    ii. indications for the performance of emergency procedures used to diagnose, manage and treat vascular, neurovascular, infectious and neurological emergency and injury in patients similar situated to Mrs. Ashworth;

    iii. hypertension;

    iv. lab abnormalities;

    v. white blood cell count abnormalities;

    vi. neutropenia;

    vii. leukocytosis;

    viii. anemia;

    ix. headache;

    x. vascular emergency;

    xi. neurovascular emergency;

    xii. meningitis;

    xiii. bacterial infection;

    xiv. tuberculosis;

    xv. infectious disease emergency;

    xvi. neurological emergency;

    xvii. lumbar puncture;

    xviii. venogram;

    xix. computed tomography;

    xx. imaging of post-surgical patients;

xxi. lumbar puncture in post-surgical patients;
xxii. infection in post-surgical patients;
xxiii. needle use in patients with potential infectious disease;
xxiv. hypothermia;
xxv. admission for evaluation and treatment of emergent conditions;
xxvi. neurological examination;
xxvii. charting and documentation in the medical record;
xxviii. chain of command and supervision of physician extenders and nursing staff;
f. failing to oversee all persons who practice medicine within its walls as to patient care to ensure that the physician and nursing staff involved in the care and treatment of Mrs. Ashworth were appropriately and adequately supervised;
g. failing to oversee all persons who practice medicine within its walls as to patient care to ensure the proper and timely treatment of Mrs. Ashworth's medical conditions as they existed in April 2021; and
h. failing to use reasonable care in the maintenance of safe and adequate facilities and equipment for the treatment of Mrs. Ashworth, including in the emergency department, to include all equipment necessary for the safe, timely and appropriate monitoring of Mrs. Ashworth in the setting of her signs and symptoms of an elevated risk of vascular, neurovascular, infectious and neurological emergency and injury, as described in this Complaint.

332.    The Count Fifteen Defendants did not have adequate policies and procedures in place in April 2021 to ensure the safety of patients like Mrs. Ashworth.

333.    The Count Fifteen Defendants should have known they did not have adequate written policies and procedures.

334.    To the extent such policies procedures did exist, the Count Fifteen Defendants knew or should have known that its physician, physician assistant and nursing staff either were not familiar with them or failed to follow them.

335.    The Count Fifteen Defendants knew or should have known that they failed to enforce their own policies, to the extent that they existed.

336.    The Count Fifteen Defendants knew or should have known that their physician, physician assistants and nursing staff did not possess adequate training, skill or knowledge in the management of patients like and including Mrs. Ashworth.

Case ID: 230402798

337. The Count Fifteen Defendants knew or should have known that it failed to provide its physician, physician assistant and nursing staff with adequate and proper training, skill or knowledge in the management of patients like and including Mrs. Ashworth.

338. The foregoing corporate negligence of the Count Fifteen Defendants increased the risk of harm and did cause harm and death to Mrs. Ashworth.

339. At all relevant times, the Count Fifteen Defendants had actual or constructive knowledge of the care and treatment that was provided or negligently _not_ provided to Mrs. Ashworth as described throughout this Complaint.

340. At all relevant times, the Count Fifteen Defendants knew, understood and appreciated the risk of catastrophic injury to Mrs. Ashworth and acted or failed to act in conscious disregard of that risk, and with an indifference to the continued health and safety of Mrs. Ashworth, as described throughout this Complaint.

341. As a direct result of the institutional failures of the Count Fifteen Defendants, Mrs. Ashworth was exposed to an unreasonable and unnecessary risk of catastrophic injury and death, which she then went on to suffer.

342. As a result of the corporate negligence of the Count Fifteen Defendants, Mrs. Ashworth suffered catastrophic and permanent injuries, death and damages.

WHEREFORE, Plaintiff demands judgment in their favor and against Defendants, individually, jointly and severally, and an award of compensatory damages in an amount greater than $50,000.00 exclusive of pre-judgement interest, post-judgement interest and costs.

Case ID: 230402798

## COUNT SIXTEEN – WRONGFUL DEATH
### Plaintiff v. All Defendants

343.    Plaintiff, individually and as Administrator of the Estate of Nicole Ashworth, brings this action under and by virtue of the Wrongful Death Act, 42 Pa.C.S.A. §8301, and the applicable Rules of Civil Procedure and decisional law of this Commonwealth interpreting this Act.

344.    As a result of the collective negligent and reckless acts and omissions of the Defendants, as described in this Complaint, Mrs. Ashworth suffered catastrophic, permanent and fatal injuries resulting in her hastened, premature and avoidable death, giving rise to the entitlement to damages by her heirs, as beneficiaries under the Wrongful Death Act.

345.    Under the Wrongful Death Act, Mrs. Ashworth left surviving her spouse, plaintiff Charles Ashworth, and her son, M.A. These individuals, who have been notified of the commencement of this action as required by law, are listed below, and are the beneficiaries entitled to recover damages under the Wrongful Death Act:

      a.  Charles Ashworth (spouse)
      b.  M.A. (minor son)

346.    As a result of the negligent and reckless acts and omissions of all Defendants, jointly and severally, Mrs. Ashworth was caused grave injuries and death resulting in the entitlement to damages by her beneficiaries under the Wrongful Death Act.

347.    Plaintiff, individually and as Administrator of the Estate of Mrs. Ashworth, on behalf of the wrongful death beneficiaries so entitled, claims damage for the monetary support the decedent would have provided to these beneficiaries, if any, during her lifetime.

348.    Plaintiff, individually and as Administrator of the Estate of Mrs. Ashworth, on behalf of the wrongful death beneficiaries so entitled, claims damages for the loss of earnings,

maintenance, support, comfort, care, society, guidance, tutelage and other losses recognized under the Wrongful Death Act and Rettger v. UPMC Shadyside, which they would have received from the decedent had her death not occurred.

349.     Plaintiff, individually and as Administrator of the Estate of Mrs. Ashworth, on behalf of all of the wrongful death beneficiaries, claims the full measure of damages recoverable under and by virtue of the Wrongful Death Act and the decisional law of this Commonwealth interpreting the Act, including but not limited to damages for all hospital and medical expenses, funeral and burial expenses, costs of estate administration, as well as the loss of the services, society, comfort, support, guidance and tutelage that she would have provided to her family during her lifetime had she lived, and damages for any and all other losses suffered by each of the beneficiaries by reason of Mrs. Ashworth's tragic and premature death, as may be allowed under the Wrongful Death Act and the decisional law interpreting the Act, including Rettger v. UPMC Shadyside.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive damages in an amount greater than $50,000.00 and greater than prevailing arbitration limits, exclusive of pre-judgment interest, post judgment interest and costs.

## COUNT SEVENTEEN – SURVIVAL ACT
### Plaintiff v. All Defendants

350.     Plaintiff brings this survival action on behalf of the Estate of Mrs. Ashworth, under and by virtue of the Survival Act, 42 Pa.C.S.A. § 8302, the applicable Rules of Civil Procedure and decisional law interpreting this Act.

351.    As a result of the Defendants' conduct, as described in this Complaint, the Estate of Mrs. Ashworth suffered catastrophic, permanent and fatal injuries and death resulting in the entitlement to damages by her Estate under the Survival Act.

352.    Plaintiff brings this action on behalf of the Estate to recover the full measure of damages recoverable under and by virtue of the Survival Act and the decisional law interpreting the Act.

353.    On behalf of the Estate of Mrs. Ashworth, Plaintiff claims damages for all economic losses to the Estate, including, but not limited to, the Estate of Mrs. Ashworth's total estimated future earning capacity, less her personal maintenance costs.

354.    On behalf of Estate of Mrs. Ashworth, Plaintiff claims damages for Mrs. Ashworth's conscious physical discomfort, pain and suffering, loss of enjoyment of life and life's pleasures and all other damages and losses recoverable under the Survival Act and the decisional law interpreting the Act.

WHEREFORE, Plaintiff demands of Defendants, jointly and severally, damages in an amount greater than $50,000.00, and greater than the prevailing arbitration limits, exclusive of pre-judgment interest, post judgment interests and costs.

## COUNT EIGHTEEN – PUNITIVE DAMAGES
### Plaintiff v. All Defendants

355.    Upon information and belief, prior to Mrs. Ashworth's death, Defendants had actual and subjective awareness of the dangers, hazards and risk of death to patients that received FiberCel implants, including Mrs. Ashworth. Despite this knowledge, Defendants willfully and maliciously failed to act.

Case ID: 230402798

356. Despite Defendants' knowledge, and in willful, wanton, outrageous and reckless disregard for human life and safety, including the safety and well-being of Mrs. Ashworth, Defendants continued to design, manufacture, fabricate, assemble, market, distribute, sell and supply FiberCel and allowed it to remain in the stream of commerce where they could injure and cause the death of consumers such as Mrs. Ashworth, failed to warn owners and users of the potential danger posed by the contaminated product and affirmatively promoted the safety and efficacy of the FiberCel, all to avoid the expense of a recall and to prevent potential lost revenue.

357. Despite such knowledge, and in willful, wanton, outrageous and reckless disregard for human life and safety, including the safety and well-being of Mrs. Ashworth, Defendants failed to recall the defective FiberCel and failed to warn or inform owners and users of the extreme degree of risk and danger posed by FiberCel or how to reduce, mitigate and eliminate those risks and dangers, all to avoid the expense of a recall and to prevent potential lost revenue caused by adverse publicity.

358. Defendants' misconduct was willful and wanton, grossly negligent and reckless and evidenced a conscious and reckless disregard for human life and safety, including the safety and well-being of Mrs. Ashworth.

359. Defendants' acts and omissions involved an extreme degree of risk considering the probability and magnitude of potential harm to others, including Mrs. Ashworth.

360. As a result of such conduct by Defendants, Mrs. Ashworth suffered extensive and severe injuries and death as described in this Complaint.

Case ID: 230402798

WHEREFORE, Plaintiff demands of Defendants, jointly and severally, damages in an amount greater than $50,000.00, and greater than the prevailing arbitration limits, exclusive of pre-judgment interest, post judgment interests and costs.

ROSS FELLER CASEY, LLP

By: _____
JOEL J. FELLER, ESQUIRE
KEVIN MARDEN, JR., ESQUIRE
KYLE A. JACOBSEN, ESQUIRE
*Attorneys for Plaintiff*

Dated: April 26, 2023

Case ID: 230402798

## PLAINTIFF'S VERIFICATION

I, Charles Ashworth, am the Plaintiff in the civil action being brought against the defendants in the Complaint to which this verification is attached. I hereby verify that I have reviewed the document which was prepared by my attorneys. The form of the statements and allegations in this document are solely made by my attorneys as part of their obligations in their representation of me. I am familiar with and have knowledge of the factual statements in the document. Some of the statements are legal determinations or information obtained by our attorneys from medical records or other sources during their investigation of the factual and legal basis for our lawsuit. Much of the legal conclusions and legal citations fall outside of my competency as a lay person. I may have direct knowledge of some, but not all, of the information provided in this document.

In signing this Verification, I am relying upon my attorneys to make appropriate allegations of fact and law consistent with their duties in representing my family's interests in this lawsuit. While I have reviewed and verified this document, the legal phrases and other information set forth in this document are stated in the language of the attorneys and based upon their knowledge of the case.

I understand that this verification is made subject to the penalties of *18 Pa.C.S. § 4904* relating to unsworn falsification to authorities.


_____
Charles Ashworth


Case ID: 230402798

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798

    Docket:      ENTRY OF APPEARANCE-CO COUNSEL

                APRIL 26, 2023 16:30:08

    Sequence:   6

**File:** 1   EOA - KHJ  KAJ.pdf

#11466884
05/25/23 03:38 PM

ROSS FELLER CASEY, LLP
By:    JOEL J. FELLER, ESQUIRE
         KEVIN HARDEN, JR., ESQUIRE
         KYLE A. JACOBSEN, ESQUIRE
         I.D. NOS: 68873/310164/320802
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000

Filed and Attested by the
Office of Judicial Records
26 APR 2023 04:30 pm
S. GILLIAM

Attorneys for Plaintiffs

| | |
|---|---|
| **CHARLES ASHWORTH, Individually and as Administrator of the Estate of NICOLE ASHWORTH** 4306 Sylvan Drive Reading, Pennsylvania : : : : : : : : : : | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| *Plaintiff* | APRIL TERM 2023 NO. 02798 |
| v. | **JURY TRIAL DEMANDED** |
| **EUROFINS DONOR & PRODUCT TESTING INC., F/K/A EUROFINS VRL, ET AL.** : : : | |

## ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

    Kindly enter the appearances of Kevin Harden, Jr, and Kyle A. Jacobsen as co-counsel for Plaintiff in the above captioned matter.

                    Respectfully,

                    **ROSS FELLER CASEY, LLP**

        By:   */s/ Kevin Harden, Jr.*
              KEVIN HARDEN, JR., ESQUIRE
              *Attorney for Plaintiff*

Dated: April 26, 2023

Case ID: 230402798

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798


Docket:        CERTIFICATE OF MERIT

                APRIL 27, 2023 14:36:15


Sequence:    7


**File:**  1    COM - ANKIT SHAH, MD.pdf

**ROSS FELLER CASEY, LLP**
By:    JOEL J. FELLER, ESQUIRE
        KEVIN HARDEN, JR., ESQUIRE
        KYLE A. JACOBSEN, ESQUIRE
        I.D. NOS: 68873/310164/320802
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000

Filed and Attested by the
Office of Judicial Records
27 APR 2023 02:36 pm
E. HAURIN

Attorneys for Plaintiffs

| | |
|---|---|
| **CHARLES ASHWORTH, Individually and as Administrator of the Estate of NICOLE ASHWORTH**<br>4306 Sylvan Drive<br>Reading, Pennsylvania<br><br>*Plaintiff*<br><br>v.<br><br>**EUROFINS DONOR & PRODUCT TESTING INC., F/K/A EUROFINS VRL, ET AL.** | COURT OF COMMON PLEAS PHILADELPHIA COUNTY<br><br><br>APRIL TERM 2023<br>NO.  02798<br><br>**JURY TRIAL DEMANDED** |

## CERTIFICATE OF MERIT PERTAINING TO ANKIT SHAH, M.D.

    I, Kevin Harden, Jr., Esquire, hereby certify that:

    ☒    an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is subject of the complaint, fell outside acceptable professional standards, was negligent and that such conduct was a cause in bringing about the harm;

AND/OR

    ☐    the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

Case ID: 230402798

☐     expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**ROSS FELLER CASEY, LLP**

By: */s/ Kevin Harden, Jr., Esquire*
     JOEL J. FELLER, ESQUIRE
     KEVIN HARDEN, JR., ESQUIRE
     KYLE A. JACOBSEN, ESQUIRE
     One Liberty Place
     1650 Market Street
     Suite 3400
     Philadelphia, PA 19103
     (215) 574-2000
     *Attorneys for Plaintiff*

Date: <u>April 27, 2023</u>

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798


Docket:        CERTIFICATE OF MERIT

               APRIL 27, 2023 14:39:58


Sequence:    8


**File:** 1    COM - CHAD ROARABAUGH, PA-C.pdf

#11466884
05/25/23 03:39 PM

**ROSS FELLER CASEY, LLP**
By:    JOEL J. FELLER, ESQUIRE
        KEVIN HARDEN, JR., ESQUIRE
        KYLE A. JACOBSEN, ESQUIRE
        I.D. NOS: 68873/310164/320802
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000

Filed and Attested by the
Office of Judicial Records
27 APR 2023 02:39 pm
E. HAURIN

Attorneys for Plaintiffs

| | | |
|---|---|---|
| **CHARLES ASHWORTH, Individually and as Administrator of the Estate of NICOLE ASHWORTH**<br>4306 Sylvan Drive<br>Reading, Pennsylvania | : | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
| *Plaintiff* | : | APRIL TERM 2023<br>NO. 02798 |
| v. | : | **JURY TRIAL DEMANDED** |
| **EUROFINS DONOR & PRODUCT TESTING INC., F/K/A EUROFINS VRL, ET AL.** | : | |

## CERTIFICATE OF MERIT PERTAINING TO CHAD ROARABAUGH, PA-C

I, Kevin Harden, Jr., Esquire, hereby certify that:

☒    an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is subject of the complaint, fell outside acceptable professional standards, was negligent and that such conduct was a cause in bringing about the harm;

AND/OR

☐    the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

Case ID: 230402798

☐      expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**ROSS FELLER CASEY, LLP**

By: _/s/ Kevin Harden, Jr., Esquire_
JOEL J. FELLER, ESQUIRE
KEVIN HARDEN, JR., ESQUIRE
KYLE A. JACOBSEN, ESQUIRE
One Liberty Place
1650 Market Street
Suite 3400
Philadelphia, PA 19103
(215) 574-2000
_Attorneys for Plaintiff_

Date: <u>April 27, 2023</u>

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798

Docket:        CERTIFICATE OF MERIT

               APRIL 27, 2023 14:42:43

Sequence:    9

**File:** 1    COM - DANIEL WIMER, PA-C.pdf

**ROSS FELLER CASEY, LLP**
By:    JOEL J. FELLER, ESQUIRE
        KEVIN HARDEN, JR., ESQUIRE
        KYLE A. JACOBSEN, ESQUIRE
        I.D. NOS: 68873/310164/320802
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000

*Filed and Attested by the Office of Judicial Records 27 APR 2023 02:42 pm E. HAURIN*

Attorneys for Plaintiffs

| | |
|---|---|
| **CHARLES ASHWORTH, Individually and as Administrator of the Estate of NICOLE ASHWORTH** 4306 Sylvan Drive Reading, Pennsylvania | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| *Plaintiff* | APRIL TERM 2023 NO.  02798 |
| v. | **JURY TRIAL DEMANDED** |
| **EUROFINS DONOR & PRODUCT TESTING INC., F/K/A EUROFINS VRL, ET AL.** | |

## CERTIFICATE OF MERIT PERTAINING TO DANEIL WIMER, PA-C

I, Kevin Harden, Jr., Esquire, hereby certify that:

☒    an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is subject of the complaint, fell outside acceptable professional standards, was negligent and that such conduct was a cause in bringing about the harm;

AND/OR

☐    the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

Case ID: 230402798

☐    expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**ROSS FELLER CASEY, LLP**

By: _/s/ Kevin Harden, Jr., Esquire_
JOEL J. FELLER, ESQUIRE
KEVIN HARDEN, JR., ESQUIRE
KYLE A. JACOBSEN, ESQUIRE
One Liberty Place
1650 Market Street
Suite 3400
Philadelphia, PA 19103
(215) 574-2000
_Attorneys for Plaintiff_

Date: <u>April 27, 2023</u>

Case ID: 230402798

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798

Docket:        CERTIFICATE OF MERIT

               APRIL 27, 2023 14:44:31

Sequence:   10

**File:** 1    COM - DAVID LAMBORN, D.O. .pdf

**ROSS FELLER CASEY, LLP**
By:    JOEL J. FELLER, ESQUIRE
        KEVIN HARDEN, JR., ESQUIRE
        KYLE A. JACOBSEN, ESQUIRE
        I.D. NOS: 68873/310164/320802
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000

*Filed and Attested by the Office of Judicial Records 27 APR 2023 02:44 pm E. HAURIN*

Attorneys for Plaintiffs

| | |
|---|---|
| **CHARLES ASHWORTH, Individually and as Administrator of the Estate of NICOLE ASHWORTH**<br>4306 Sylvan Drive<br>Reading, Pennsylvania<br><br>*Plaintiff*<br><br>v.<br><br>**EUROFINS DONOR & PRODUCT TESTING INC., F/K/A EUROFINS VRL,<br>ET AL.** | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br><br>APRIL TERM 2023<br>NO. 02798<br><br>**JURY TRIAL DEMANDED** |

## CERTIFICATE OF MERIT PERTAINING TO DAVID LAMBORN, D.O.

I, Kevin Harden, Jr., Esquire, hereby certify that:

☒    an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is subject of the complaint, fell outside acceptable professional standards, was negligent and that such conduct was a cause in bringing about the harm;

AND/OR

☐    the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

Case ID: 230402798

☐    expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**ROSS FELLER CASEY, LLP**

By: _/s/ Kevin Harden, Jr., Esquire_
JOEL J. FELLER, ESQUIRE
KEVIN HARDEN, JR., ESQUIRE
KYLE A. JACOBSEN, ESQUIRE
One Liberty Place
1650 Market Street
Suite 3400
Philadelphia, PA 19103
(215) 574-2000
_Attorneys for Plaintiff_

Date: <u>April 27, 2023</u>

Case ID: 230402798

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798

Docket:        CERTIFICATE OF MERIT

               APRIL 27, 2023 14:46:29

Sequence:    11

**File:** 1    COM - JESSICA RAE VIOLA, PA-C.pdf

**ROSS FELLER CASEY, LLP**
By:     JOEL J. FELLER, ESQUIRE
          KEVIN HARDEN, JR., ESQUIRE
          KYLE A. JACOBSEN, ESQUIRE
          I.D. NOS: 68873/310164/320802
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000

*Filed and Attested by the
Office of Judicial Records
27 APR 2023 02:46 pm
E. HAURIN*

Attorneys for Plaintiffs

| | |
|---|---|
| **CHARLES ASHWORTH, Individually and as Administrator of the Estate of NICOLE ASHWORTH**<br>4306 Sylvan Drive<br>Reading, Pennsylvania<br><br>*Plaintiff*<br><br>v.<br><br>**EUROFINS DONOR & PRODUCT TESTING INC., F/K/A EUROFINS VRL, ET AL.** | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br><br>APRIL TERM 2023<br>NO.  02798<br><br>**JURY TRIAL DEMANDED** |

## CERTIFICATE OF MERIT PERTAINING TO JESSICA RAE VIOLA, PA-C

I, Kevin Harden, Jr., Esquire, hereby certify that:

☒      an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is subject of the complaint, fell outside acceptable professional standards, was negligent and that such conduct was a cause in bringing about the harm;

AND/OR

☐      the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

Case ID: 230402798

☐    expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**ROSS FELLER CASEY, LLP**

By: */s/ Kevin Harden, Jr., Esquire*
    JOEL J. FELLER, ESQUIRE
    KEVIN HARDEN, JR., ESQUIRE
    KYLE A. JACOBSEN, ESQUIRE
    One Liberty Place
    1650 Market Street
    Suite 3400
    Philadelphia, PA 19103
    (215) 574-2000
    *Attorneys for Plaintiff*

Date: <u>April 27, 2023</u>

Case ID: 230402798

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798


Docket:        CERTIFICATE OF MERIT

               APRIL 27, 2023 14:48:46


Sequence:    12


**File:** 1    COM - JOSEPH LI, MD.pdf

**ROSS FELLER CASEY, LLP**
By:    JOEL J. FELLER, ESQUIRE
       KEVIN HARDEN, JR., ESQUIRE
       KYLE A. JACOBSEN, ESQUIRE
       I.D. NOS: 68873/310164/320802
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000

*Filed and Attested by the Office of Judicial Records 27 APR 2023 02:48 pm E. HAURIN*

Attorneys for Plaintiffs

| | |
|---|---|
| **CHARLES ASHWORTH, Individually and as Administrator of the Estate of NICOLE ASHWORTH**<br>4306 Sylvan Drive<br>Reading, Pennsylvania<br><br>                    *Plaintiff*<br><br>              v.<br><br>**EUROFINS DONOR & PRODUCT TESTING INC., F/K/A EUROFINS VRL, ET AL.** | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br><br>APRIL TERM 2023<br>NO.  02798<br><br>**JURY TRIAL DEMANDED** |

## CERTIFICATE OF MERIT PERTAINING TO JOSEPH C. LI, M.D.

I, Kevin Harden, Jr., Esquire, hereby certify that:

☒    an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is subject of the complaint, fell outside acceptable professional standards, was negligent and that such conduct was a cause in bringing about the harm;

AND/OR

☐    the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

Case ID: 230402798

☐     expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**ROSS FELLER CASEY, LLP**

By: */s/ Kevin Harden, Jr., Esquire*
   JOEL J. FELLER, ESQUIRE
   KEVIN HARDEN, JR., ESQUIRE
   KYLE A. JACOBSEN, ESQUIRE
   One Liberty Place
   1650 Market Street
   Suite 3400
   Philadelphia, PA 19103
   (215) 574-2000
   *Attorneys for Plaintiff*

Date: <u>April 27, 2023</u>

Case ID: 230402798

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798


Docket:        CERTIFICATE OF MERIT

               APRIL 27, 2023 14:51:35

Sequence:    13

**File:** 1   COM - MAIN LINE HEALTH SYSTEM.pdf


zlrppdf 2/27/2013

#11466884
05/25/23 03:41 PM

ROSS FELLER CASEY, LLP
By:    JOEL J. FELLER, ESQUIRE
        KEVIN HARDEN, JR., ESQUIRE
        KYLE A. JACOBSEN, ESQUIRE
        I.D. NOS: 68873/310164/320802
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000

Filed and Attested by the
Office of Judicial Records
27 APR 2023 02:51 pm
E. HAURIN

Attorneys for Plaintiffs

| | |
|---|---|
| **CHARLES ASHWORTH, Individually and as Administrator of the Estate of NICOLE ASHWORTH**<br>4306 Sylvan Drive<br>Reading, Pennsylvania<br><br>                    *Plaintiff*<br><br>        v.<br><br>**EUROFINS DONOR & PRODUCT TESTING INC., F/K/A EUROFINS VRL,<br>ET AL.** | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br><br>APRIL TERM 2023<br>NO. 02798<br><br>**JURY TRIAL DEMANDED** |

## CERTIFICATE OF MERIT PERTAINING TO MAIN LINE HEALTH SYSTEM

I, Kevin Harden, Jr., Esquire, hereby certify that:

☐    an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is subject of the complaint, fell outside acceptable professional standards, was negligent and that such conduct was a cause in bringing about the harm;

AND/OR

☒    the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

Case ID: 230402798

☐    expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**ROSS FELLER CASEY, LLP**

By: */s/ Kevin Harden, Jr., Esquire*
    JOEL J. FELLER, ESQUIRE
    KEVIN HARDEN, JR., ESQUIRE
    KYLE A. JACOBSEN, ESQUIRE
    One Liberty Place
    1650 Market Street
    Suite 3400
    Philadelphia, PA 19103
    (215) 574-2000
    *Attorneys for Plaintiff*

Date: <u>April 27, 2023</u>

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798


    Docket:        CERTIFICATE OF MERIT

                   APRIL 27, 2023 14:54:11

    Sequence:     14

**File:** 1   COM - MAIN LINE HEALTHCARE.pdf

**ROSS FELLER CASEY, LLP**
By:     JOEL J. FELLER, ESQUIRE
        KEVIN HARDEN, JR., ESQUIRE
        KYLE A. JACOBSEN, ESQUIRE
        I.D. NOS: 68873/310164/320802
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000

Filed and Attested by the
Office of Judicial Records
27 APR 2023 02:54 pm
E. HAURIN

Attorneys for Plaintiffs

| | |
|---|---|
| **CHARLES ASHWORTH, Individually and as Administrator of the Estate of NICOLE ASHWORTH**<br>4306 Sylvan Drive<br>Reading, Pennsylvania<br><br>                                        *Plaintiff*<br><br>                          v.<br><br>**EUROFINS DONOR & PRODUCT TESTING INC., F/K/A EUROFINS VRL, ET AL.** | COURT OF COMMON PLEAS PHILADELPHIA COUNTY<br><br><br>APRIL TERM 2023<br>NO.  02798<br><br>**JURY TRIAL DEMANDED** |

## CERTIFICATE OF MERIT PERTAINING TO MAIN LINE HEALTHCARE

I, Kevin Harden, Jr., Esquire, hereby certify that:

☐       an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is subject of the complaint, fell outside acceptable professional standards, was negligent and that such conduct was a cause in bringing about the harm;

AND/OR

☒       the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

Case ID: 230402798

☐    expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**ROSS FELLER CASEY, LLP**

By: _/s/ Kevin Harden, Jr., Esquire_
    JOEL J. FELLER, ESQUIRE
    KEVIN HARDEN, JR., ESQUIRE
    KYLE A. JACOBSEN, ESQUIRE
    One Liberty Place
    1650 Market Street
    Suite 3400
    Philadelphia, PA 19103
    (215) 574-2000
    _Attorneys for Plaintiff_

Date: <u>April 27, 2023</u>

Case ID: 230402798

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798


Docket:      CERTIFICATE OF MERIT

             APRIL 27, 2023 14:56:21

Sequence:   15

**File:** 1   COM - MITCHELL DRAKE MD.pdf

**ROSS FELLER CASEY, LLP**
By:     JOEL J. FELLER, ESQUIRE
          KEVIN HARDEN, JR., ESQUIRE
          KYLE A. JACOBSEN, ESQUIRE
          I.D. NOS: 68873/310164/320802
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000

*Filed and Attested by the
Office of Judicial Records
27 APR 2023 02:56 pm
B. HAURIN*

Attorneys for Plaintiffs

| | |
|---|---|
| **CHARLES ASHWORTH, Individually and as Administrator of the Estate of NICOLE ASHWORTH**<br>4306 Sylvan Drive<br>Reading, Pennsylvania<br><br>*Plaintiff*<br><br>v.<br><br>**EUROFINS DONOR & PRODUCT TESTING INC., F/K/A EUROFINS VRL, ET AL.** | COURT OF COMMON PLEAS PHILADELPHIA COUNTY<br><br><br>APRIL TERM 2023<br>NO.  02798<br><br>**JURY TRIAL DEMANDED** |

## CERTIFICATE OF MERIT PERTAINING TO MITCHELL DRAKE, M.D.

I, Kevin Harden, Jr., Esquire, hereby certify that:

☒     an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is subject of the complaint, fell outside acceptable professional standards, was negligent and that such conduct was a cause in bringing about the harm;

AND/OR

☐     the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

Case ID: 230402798

☐    expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**ROSS FELLER CASEY, LLP**

By: */s/ Kevin Harden, Jr., Esquire*
    JOEL J. FELLER, ESQUIRE
    KEVIN HARDEN, JR., ESQUIRE
    KYLE A. JACOBSEN, ESQUIRE
    One Liberty Place
    1650 Market Street
    Suite 3400
    Philadelphia, PA 19103
    (215) 574-2000
    *Attorneys for Plaintiff*

Date: <u>April 27, 2023</u>

Case ID: 230402798

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798

Docket:       CERTIFICATE OF MERIT

              APRIL 27, 2023 14:58:19

Sequence:    16

**File:** 1    COM - PAOLI HOSPITAL.pdf

**ROSS FELLER CASEY, LLP**
By:   JOEL J. FELLER, ESQUIRE
       KEVIN HARDEN, JR., ESQUIRE
       KYLE A. JACOBSEN, ESQUIRE
       I.D. NOS: 68873/310164/320802
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000

*Filed and Attested by the Office of Judicial Records 27 APR 2023 02:58 pm B. HAURIN*

Attorneys for Plaintiffs

| | |
|---|---|
| **CHARLES ASHWORTH, Individually and as Administrator of the Estate of NICOLE ASHWORTH**<br>4306 Sylvan Drive<br>Reading, Pennsylvania<br><br>                 *Plaintiff*<br><br>        v.<br><br>**EUROFINS DONOR & PRODUCT TESTING INC., F/K/A EUROFINS VRL, ET AL.** | COURT OF COMMON PLEAS PHILADELPHIA COUNTY<br><br><br>APRIL TERM 2023<br>NO.  02798<br><br><u>**JURY TRIAL DEMANDED**</u> |

<u>**CERTIFICATE OF MERIT PERTAINING TO MAIN LINE HOSPITALS, INC., d/b/a PAOLI HOSPITAL**</u>

I, Kevin Harden, Jr., Esquire, hereby certify that:

☐    an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is subject of the complaint, fell outside acceptable professional standards, was negligent and that such conduct was a cause in bringing about the harm;

AND/OR

☒    the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

Case ID: 230402798

☐    expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**ROSS FELLER CASEY, LLP**

By: */s/ Kevin Harden, Jr., Esquire*
     JOEL J. FELLER, ESQUIRE
     KEVIN HARDEN, JR., ESQUIRE
     KYLE A. JACOBSEN, ESQUIRE
     One Liberty Place
     1650 Market Street
     Suite 3400
     Philadelphia, PA 19103
     (215) 574-2000
     *Attorneys for Plaintiff*

Date: <u>April 27, 2023</u>

Case ID: 230402798

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798


Docket:      CERTIFICATE OF MERIT

             APRIL 27, 2023 15:00:16

Sequence:   17


**File:** 1   COM - READING HOSPITAL.pdf

**ROSS FELLER CASEY, LLP**
By:     JOEL J. FELLER, ESQUIRE
         KEVIN HARDEN, JR., ESQUIRE
         KYLE A. JACOBSEN, ESQUIRE
         I.D. NOS: 68873/310164/320802
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000

Filed and Attested by the
Office of Judicial Records
27 APR 2023 03:00 pm
E. HAURIN

Attorneys for Plaintiffs

| | | |
|---|---|---|
| **CHARLES ASHWORTH, Individually and as** | : | COURT OF COMMON PLEAS |
| **Administrator of the Estate of NICOLE** | : | PHILADELPHIA COUNTY |
| **ASHWORTH** | : | |
| 4306 Sylvan Drive | : | |
| Reading, Pennsylvania | : | |
| | : | APRIL TERM 2023 |
| *Plaintiff* | : | NO.  02798 |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| **EUROFINS DONOR & PRODUCT TESTING** | : | |
| **INC., F/K/A EUROFINS VRL,** | : | |
| **ET AL.** | : | |

## CERTIFICATE OF MERIT PERTAINING TO READING HOSPITAL

I, Kevin Harden, Jr., Esquire, hereby certify that:

☐     an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is subject of the complaint, fell outside acceptable professional standards, was negligent and that such conduct was a cause in bringing about the harm;

AND/OR

☒     the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

Case ID: 230402798

☐    expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**ROSS FELLER CASEY, LLP**

By: */s/ Kevin Harden, Jr., Esquire*
    JOEL J. FELLER, ESQUIRE
    KEVIN HARDEN, JR., ESQUIRE
    KYLE A. JACOBSEN, ESQUIRE
    One Liberty Place
    1650 Market Street
    Suite 3400
    Philadelphia, PA 19103
    (215) 574-2000
    *Attorneys for Plaintiff*

Date: <u>April 27, 2023</u>

Case ID: 230402798

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798


Docket:        CERTIFICATE OF MERIT

               APRIL 27, 2023 15:02:18


Sequence:      18


**File:**  1    COM - TOWER HEALTH MEDICAL GROUP.pdf

**ROSS FELLER CASEY, LLP**
By:    JOEL J. FELLER, ESQUIRE
       KEVIN HARDEN, JR., ESQUIRE
       KYLE A. JACOBSEN, ESQUIRE
       I.D. NOS: 68873/310164/320802
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000

*Filed and Attested by the Office of Judicial Records 27 APR 2023 03:02 pm E. HAURIN*

Attorneys for Plaintiffs

| | |
|---|---|
| **CHARLES ASHWORTH, Individually and as Administrator of the Estate of NICOLE ASHWORTH**<br>4306 Sylvan Drive<br>Reading, Pennsylvania<br><br>                                  *Plaintiff*<br><br>                v.<br><br>**EUROFINS DONOR & PRODUCT TESTING INC., F/K/A EUROFINS VRL, ET AL.** | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br><br>APRIL TERM 2023<br>NO.  02798<br><br>**JURY TRIAL DEMANDED** |

## CERTIFICATE OF MERIT PERTAINING TO TOWER HEALTH MEDICAL GROUP

I, Kevin Harden, Jr., Esquire, hereby certify that:

☐    an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is subject of the complaint, fell outside acceptable professional standards, was negligent and that such conduct was a cause in bringing about the harm;

AND/OR

☒    the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

Case ID: 230402798

☐     expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**ROSS FELLER CASEY, LLP**

By: _/s/ Kevin Harden, Jr., Esquire_
JOEL J. FELLER, ESQUIRE
KEVIN HARDEN, JR., ESQUIRE
KYLE A. JACOBSEN, ESQUIRE
One Liberty Place
1650 Market Street
Suite 3400
Philadelphia, PA 19103
(215) 574-2000
_Attorneys for Plaintiff_

Date: <u>April 27, 2023</u>

Case ID: 230402798

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798


Docket:        CERTIFICATE OF MERIT

               APRIL 27, 2023 15:04:20

Sequence:    19


**File:** 1    COM - TOWER HEALTH.pdf

**ROSS FELLER CASEY, LLP**
By:    JOEL J. FELLER, ESQUIRE
        KEVIN HARDEN, JR., ESQUIRE
        KYLE A. JACOBSEN, ESQUIRE
        I.D. NOS: 68873/310164/320802
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000

Filed and Attested by the
Office of Judicial Records
27 APR 2023 03:04 pm
E. HAURIN

Attorneys for Plaintiffs

| | |
|---|---|
| **CHARLES ASHWORTH, Individually and as Administrator of the Estate of NICOLE ASHWORTH**<br>4306 Sylvan Drive<br>Reading, Pennsylvania<br><br>*Plaintiff*<br><br>v.<br><br>**EUROFINS DONOR & PRODUCT TESTING INC., F/K/A EUROFINS VRL, ET AL.** | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br><br>APRIL TERM 2023<br>NO.  02798<br><br>**JURY TRIAL DEMANDED** |

<u>**CERTIFICATE OF MERIT PERTAINING TO TOWER HEALTH**</u>

I, Kevin Harden, Jr., Esquire, hereby certify that:

☐    an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is subject of the complaint, fell outside acceptable professional standards, was negligent and that such conduct was a cause in bringing about the harm;

AND/OR

☒    the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

Case ID: 230402798

☐    expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**ROSS FELLER CASEY, LLP**

By: */s/ Kevin Harden, Jr., Esquire*
     JOEL J. FELLER, ESQUIRE
     KEVIN HARDEN, JR., ESQUIRE
     KYLE A. JACOBSEN, ESQUIRE
     One Liberty Place
     1650 Market Street
     Suite 3400
     Philadelphia, PA 19103
     (215) 574-2000
     *Attorneys for Plaintiff*

Date: <u>April 27, 2023</u>

Case ID: 230402798

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798

Docket:       CERTIFICATE OF MERIT

              APRIL 27, 2023 15:06:33

Sequence:    20

**File:** 1    COM - ADAM SIGAL MD.pdf

**ROSS FELLER CASEY, LLP**
By:    JOEL J. FELLER, ESQUIRE
         KEVIN HARDEN, JR., ESQUIRE
         KYLE A. JACOBSEN, ESQUIRE
         I.D. NOS: 68873/310164/320802
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000

*Filed and Attested by the
Office of Judicial Records
27 APR 2023 03:06 pm
E. HAURIN*

Attorneys for Plaintiffs

| | |
|---|---|
| **CHARLES ASHWORTH, Individually and as** : | COURT OF COMMON PLEAS |
| **Administrator of the Estate of NICOLE** : | PHILADELPHIA COUNTY |
| **ASHWORTH** : | |
| 4306 Sylvan Drive : | |
| Reading, Pennsylvania : | |
| : | APRIL TERM 2023 |
| *Plaintiff* : | NO. 02798 |
| v. : | |
| : | **JURY TRIAL DEMANDED** |
| **EUROFINS DONOR & PRODUCT TESTING** : | |
| **INC., F/K/A EUROFINS VRL,** : | |
| **ET AL.** : | |

## CERTIFICATE OF MERIT PERTAINING TO ADAM SIGAL M.D.

I, Kevin Harden, Jr., Esquire, hereby certify that:

☒     an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is subject of the complaint, fell outside acceptable professional standards, was negligent and that such conduct was a cause in bringing about the harm;

AND/OR

☐     the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

Case ID: 230402798

☐     expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**ROSS FELLER CASEY, LLP**

By: _/s/ Kevin Harden, Jr., Esquire_
JOEL J. FELLER, ESQUIRE
KEVIN HARDEN, JR., ESQUIRE
KYLE A. JACOBSEN, ESQUIRE
One Liberty Place
1650 Market Street
Suite 3400
Philadelphia, PA 19103
(215) 574-2000
_Attorneys for Plaintiff_

Date: <u>April 27, 2023</u>

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798


Docket:      AFFIDAVIT OF SERVICE FILED

             APRIL 28, 2023 13:07:19

Sequence:    21

**File:** 1    P206524.pdf

Joel Feller, Esquire (Atty ID#: 68873)
1650 Market Street, Suite 3450
Philadelphia, PA 19103
(215) 574-2000

**Commonwealth of Pennsylvania
In the Court of Common Pleas
Philadelphia County**

Filed and Attested by the
Office of Judicial Records
28 APR 2023 01:07 pm
G. IMPERATO

**Charles Ashworth, et al.**

v.

**Eurofins Donor & Product Testing Inc., f/k/a Eurofins VRL, et al.**

**Case No.:23-04-2798**

_____ /

Commonwealth of Pennsylvania
County of Philadelphia    ss

## AFFIDAVIT OF CORPORATE SERVICE

I, **Dennis Richman,** being duly sworn according to the law upon my oath, depose and say, that I am not a party to this action, am over 18 years of age, and have no direct personal interest in this litigation.

| | |
|---|---|
| PARTY SERVED: | **Eurofins Donor & Product Testing Inc., f/k/a Eurofins VRL** |
| DOCUMENTS SERVED: | **Complaint** |
| BY SERVING UPON: | **Jamison, Person in Charge** |
| DATE & TIME OF SERVICE: | **4/27/2023 10:16 AM** |

PHYSICAL DESCRIPTION:    **Age: 30**      **Weight: 160**      **Hair: Black**
**Sex: Male**      **Height: 5'10"**      **Race: Asian**

SERVED ADDRESS:    **401 N. 3rd Street, Suite 279
Philadelphia, PA 19123**

I hereby affirm that the information contained in the Affidavit of Service is true and correct. This affirmation is made subject to the penalties of 18 PA C.S. 4904 relating to unsworn falsification to authorities.

GPS: 39.9576305555556;-75.1437527777778





Subscribed and sworn before me, a Notary
Public, this 27th day of April, 2023

_Regina A. Richman_

Regina A. Richman, Notary Public
Falls Twp., Bucks County
My Commission expires on: 12/12/2025

Dennis Richman
Dennis Richman's Services for the Professional, Inc
4 Neshaminy Interplex Drive, Suite 108,
Trevose, PA 19053
(215) 977-9393

Order #P206524

Case ID: 230402798

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798


Docket:       AFFIDAVIT OF SERVICE FILED

              MAY 4, 2023 16:51:46

Sequence:     22

**File:** 1    2023-05-04 Affidavit of Service - Aziyo Biologics.pdf

#11466884
05/25/23 03:44 PM

**ROSS FELLER CASEY, LLP**
By:   JOEL J. FELLER, ESQUIRE
      KEVIN HARDEN, JR., ESQUIRE
      KYLE A. JACOBSEN, ESQUIRE
      I.D. NOS: 68873/310164/320802
One Liberty Place, Suite 3400
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 574-2000

*Filed and Attested by the*
*Office of Judicial Records*
*04 MAY 2023 04:51 pm*
*G. IMPERATO*

*Attorneys for Plaintiffs*

---

| | | |
|---|---|---|
| **CHARLES ASHWORTH, Individually and as Administrator of the Estate of NICOLE ASHWORTH** | : | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| | : | |
| | : | |
| | : | |
| | : | APRIL TERM 2023 |
| *Plaintiffs* | : | NO.  02798 |
| v. | : | |
| **AZIYO BIOLOGICS, INC., et al.** | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |

---

## AFFIDAVIT OF SERVICE

TO THE PROTHONOTARY:

The undersigned herby certifies that, pursuant to Rule 404(2) of the Pennsylvania Rules of Civil Procedure, service of a true and correct copy of the Civil Action Complaint was made upon defendant, Aziyo Biologics, Inc., via United States Postal Service Certified Mail Return Receipt Requested on May 3, 2023.  A copy of the "Electronic Delivery Confirmation" is attached hereto as Exhibit "A".

**ROSS FELLER CASEY, LLP**

By:   */s/ Kevin Harden, Jr.*
      JOEL J. FELLER, ESQUIRE
      KEVIN HARDEN, JR., ESQUIRE
      KYLE A. JACOBSEN, ESQUIRE
      *Attorneys for Plaintiff*

Case ID: 230402798

# Exhibit A

Case ID: 230402798

## Electronic Delivery Confirmation™



**USPS CERTIFIED MAIL™**

Ross Feller Casey, LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 19103-7331

US POSTAGE AND FEES PAID
PRIORITY MAIL
Apr 27 2023
Mailed from ZIP 19103
1 LB PRIORITY MAIL RATE
ZONE 2 NO SURCHARGE
11923275
CommercialBasePrice



062S0012913542

**USPS CERTIFIED MAIL**

9402 8118 9876 5429 2829 13

AZIYO Biologics Inc
12510 PROSPERITY DR STE 370
SILVER SPRING MD 20904-1624

| | |
|---|---|
| Reference | Ashworth-sm |
| USPS # | 9402811898765429282913 |
| USPS Mail Class | Certified with Return Receipt (Signature) |
| USPS Status | Your item has been delivered to an agent for final delivery in SILVER SPRING, MD 20904 on May 3, 2023 at 5:21 pm. |
| USPS History | Departed USPS Regional Destination Facility, 05/02/2023, 7:45 pm, GAITHERSBURG MD DISTRIBUTION CENTER |
| | Arrived at USPS Regional Destination Facility, 05/02/2023, 11:33 am, GAITHERSBURG MD DISTRIBUTION CENTER |
| | In Transit to Next Facility, 05/01/2023 |
| | In Transit to Next Facility, 04/30/2023 |
| | Departed USPS Regional Origin Facility, April 29, 2023, 1:14 am, PHILADELPHIA PA DISTRIBUTION CENTER |
| | In Transit to Next Facility, 04/28/2023 |
| | Arrived at USPS Regional Origin Facility, 04/27/2023, 11:30 pm, PHILADELPHIA PA DISTRIBUTION CENTER |
| | USPS picked up item, April 27, 2023, 6:58 pm, PHILADELPHIA, PA 19103 |
| | Shipping Label Created, USPS Awaiting Item, April 27, 2023, 3:53 pm, PHILADELPHIA, PA 19103 |

**Electronic Delivery Confirmation Report © 2023 Certified Mail Envelopes, Inc. All rights reserved.**
The data collected for this mail label was authored and reported by The United States Postal Service USPS. Copies are available from your Post Office or online at www.USPS.com.  USPS Certified Mail™ is a registered trademark of The United States Postal Service. All rights reserved.
**Report Design Copyright 2023** Certified Mail Envelopes, Inc. www.Certified-Mail-Labels.com www.Certified-Mail-Envelopes.com
**Date Verified: 05/04/2023 06:59:12 (UTC)**

Case ID: 230402798

ASHWORTH ETAL VS EUROFINS DONOR & PRODUCT TESTING

230402798


Docket:        AFFIDAVIT OF SERVICE FILED

               MAY 5, 2023 10:53:05

Sequence:      23


**File:** 1    2023-05-05 Affidavit of Service - Medtronic Sofamor
               Danek USA.pdf

#11466884
05/25/23 03:44 PM